CLEF CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

1/4/2019
JULIA C. DUDLEY, CLERK
BY: /S/ T. Taylor
DEPUTY CLERK
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

**DARRYL SYLVESTER JACKSON,**

**Petitioner,**

**v.**

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

**Respondent.**

Case No.: 7:19-cv-00006

## PETITION FOR WRIT OF HABEAS CORPUS
## UNDER 28 U.S.C. § 2254

Kevin S. Elliker (VSB No. 87498)
Ann E. Hancock (VSB No. 91010)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8656
kelliker@HuntonAK.com
hancocka@Hunton.AK.com

Carter C. Simpson (VSB No. 81988)
(*pro hac vice* motion forthcoming)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
Telephone: (202) 955-1500
csimpson@HuntonAK.com

*Counsel for Petitioner*

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................ i

Introduction ............................................................................................................................ 1

Procedural History ................................................................................................................ 1

Jurisdiction and Venue .......................................................................................................... 2

Statement of Facts ................................................................................................................. 3

    A.    The Crime, Investigation, and Arrest ................................................................. 3

    B.    The Trial ............................................................................................................. 4

    C.    Direct Appeal ................................................................................................... 12

    D.    State Habeas Proceeding .................................................................................. 13

Legal Standards ................................................................................................................... 15

Claims Presented to the State Court .................................................................................... 20

I.    Jackson's right to effective assistance of counsel was violated when his trial counsel failed to move to strike the § 18.2-308.2 felon-in-possession charge based on insufficient evidence that Jackson possessed an actual firearm .................................. 20

    A.    Conviction under § 18.2-308.2 requires proof of an actual firearm. ................... 21

    B.    Jackson's trial counsel was deficient in failing to move to strike the § 18.2-308.2 charge, because no evidence suggested the object in question was an actual firearm. ..................................................................................................... 22

    C.    Jackson was prejudiced by his trial counsel's deficient performance. ............... 23

    D.    The Supreme Court of Virginia's rejection of this claim was based on an unreasonable determination of facts, because there was no evidence that Jackson pointed a firearm at the store owner. ..................................................... 25

Claims Not Presented to the State Court .............................................................................. 27

II.    Jackson's right to effective assistance of counsel was violated when his trial counsel failed to request a jury instruction defining "firearm" for the § 18.2-308.2 felon-in-possession charge. ....................................................................................... 28

    A.    The felon-in-possession statute applies only to actual firearms. ....................... 28

    B.    Jackson's trial counsel was deficient in failing to offer an instruction defining "firearm" under § 18.2-308.2. ........................................................................... 29

    C.    Jackson was prejudiced by his trial counsel's deficient performance. ............... 31

III.    Jackson's right to effective assistance of counsel was violated when his trial counsel failed to object to the incorrect jury instructions defining "firearm" for the § 18.2-53.1 use-of-a-firearm charge .................................................................... 33

    A.    Section 18.2-53.1 applies only to firearms capable of firing or objects given the appearance of that capability. ................................................................... 33

B.    Jackson's trial counsel was deficient in failing to object to jury instructions that allowed conviction under § 18.2-53.1 based on an actual inoperable firearm that was not given the appearance of being capable of firing. .............. 34

C.    Jackson was prejudiced by his trial counsel's deficient performance. ............... 36

IV.    Jackson's right to effective assistance of counsel was violated when his trial counsel failed to object to incorrect jury instructions defining "use" for the § 18.2-53.1 use-of-a-firearm charge. ....................................................................... 38

A.    "Use" and "display" are not synonymous under § 18.2-53.1. ............................ 39

B.    Jackson's trial counsel was deficient in failing to object to the circuit court's explanation that "use" means "display." ................................................. 40

C.    Jackson was prejudiced by his trial counsel's deficient performance. ............... 42

V.    Jackson's right to effective assistance of counsel was violated when his trial counsel failed to move to strike the § 18.2-53.1 use-of-a-firearm charge for insufficient proof that Jackson used or threateningly displayed a firearm. .................... 44

A.    Section 18.2-53.1 prohibits the use or threatening display of a firearm during the commission of a robbery. .............................................................. 44

B.    Jackson's trial counsel was deficient in failing to move to strike the § 18.2-53.1 charge because no proof suggested the alleged firearm was used or displayed in a threatening manner. ....................................................... 45

C.    Jackson was prejudiced by his trial counsel's deficient performance. ............... 46

VI.    Jackson's right to effective assistance of counsel was violated when his trial counsel failed to request a jury instruction on accomplice testimony. ........................ 47

A.    In Virginia, uncorroborated accomplice testimony requires an accompanying jury instruction. ............................................................................. 47

B.    Jackson's trial counsel was deficient by failing to seek a jury instruction regarding accomplice testimony. ......................................................... 49

C.    Jackson was prejudiced by his trial counsel's deficient performance. ............... 52

VII.    The cumulative effect of trial counsel's errors prejudiced Jackson ................................. 54

Prayer for Relief .................................................................................................. 56

# INTRODUCTION

Darryl Sylvester Jackson, Jr., through counsel, asks this Court for a Writ of Habeas Corpus under 28 U.S.C. § 2254. In 2014, the Commonwealth of Virginia charged Jackson for crimes arising out of the December 2011, 2012 robbery of a convenience store in Winchester, Virginia. After a one-day trial in the Circuit Court for the City of Winchester, Jackson was convicted of robbery (Va. Code § 18.2-58), use of a firearm in the commission of a felony (Va. Code § 18.2-53.1), conspiracy to commit robbery (Va. Code §§ 18.2-58 and 22), and possession of a firearm by a convicted felon (Va. Code §18.2-308.2). The circuit court sentenced Jackson to 15 years in prison. Jackson was convicted of these crimes because he was deprived of the effective assistance of counsel, in violation of the Sixth Amendment of the United States Constitution.

# PROCEDURAL HISTORY

Jackson was tried and convicted in the Circuit Court for the City of Winchester, Virginia, on March 30, 2015. The jury found Jackson guilty on all four counts, and the circuit court sentenced him to 15 years in prison with 1 year suspended. The Court of Appeals of Virginia denied Jackson's petition for direct appeal on November 5, 2015. The Supreme Court of Virginia then denied Jackson's elevated petition for a direct appeal on June 29, 2016. Jackson did not seek a writ of certiorari from the United States Supreme Court.

Jackson timely filed a *pro se* petition for habeas corpus in the Supreme Court of Virginia on June 26, 2017. The *pro se* petition alleged a single claim of ineffective assistance of counsel, arising from his trial counsel's failure to challenge the sufficiency of the evidence supporting the felon-in-possession charge under Virginia Code § 18.2-308.2. The Supreme Court of Virginia appointed Jackson State habeas counsel on December 6, 2017, but twice denied appointed

counsel's request to amend the *pro se* petition to add additional claims. After oral argument on the single *pro se* claim, the Court dismissed the petition in a 4-3 decision. *See Jackson v. Clarke*, 2018 WL 2440266 (Va. May 31, 2018) (per curiam).[1] The Court then denied Jackson's petition for rehearing on October 5, 2018.

This Petition is timely. State inmates like Jackson must file § 2254 petitions within one year of the date on which their convictions "became final by the conclusion of direct review or the expiration of time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Jackson's one-year period started on September 27, 2016, the deadline for seeking certiorari from the United States Supreme Court. *See Frasch v. Peguese*, 414 F.3d 518, 521 (4th Cir. 2005) (recognizing the "time for seeking such review" under § 2244(d)(1)(A) includes the 90-day window for seeking certiorari). Jackson's timely filed June 26, 2017 *pro se* petition tolled the one-year federal deadline with 93 days remaining. *See* 28 U.S.C. § 2244(d)(2). The period started running again when the Supreme Court of Virginia ended the state proceedings on October 5, 2018, making this Petition due on or before January 7, 2019.[2]

## JURISDICTION AND VENUE

This Court has jurisdiction over this Petition because Jackson is being held at the Wallens Ridge State Prison in Big Stone Gap, Virginia, pursuant to the judgment of a State court and in violation of the Constitution of the United States. *See* 28 U.S.C. § 2254(a). Venue lies in the

---

[1] A copy of the Supreme Court's slip opinion is attached as Exhibit 1.

[2] Jackson's filing deadline falls on Sunday, January 6, 2019, which means he must file by the end of the next business day. *See* Rule 12 of the Rules Governing Section 2254 Cases (applying the Federal Rules of Civil Procedure to State-inmate federal habeas petitions); Fed. R. Civ. P. 6(a)(1)(C) (instructing that, when calculating time periods, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"); *see, e.g.*, *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000) (applying Fed. R. Civ. P. 6(a) to calculate a § 2244(d) limitations period).

Western District of Virginia, the judicial district where Jackson was convicted and is being

unlawfully detained. *See id.* § 2241(d). Venue is appropriate in the Harrisonburg Division of the

Western District, because Jackson was convicted in the Circuit Court for the City of Winchester,

Virginia. *See* W.D. Va. Local R. 2(a)–(b).

## STATEMENT OF FACTS[3]

### A.    The Crime, Investigation, and Arrest

 On the evening of December 11, 2012, someone robbed the Caribbean Food Store

located at 226 Kern Street in Winchester, Virginia. (Tr. 64:17–65:11.)[4]  According to the store's

owner, three men entered the store and demanded money. (*Id*. at 77:14–78:12.)  The owner did

not recognize the robbers, and there were no surveillance cameras in the store that night. (*Id.* at

83:7–13.)  When the owner reached for the key to the cash register, one of the men slid under the

counter and took some cigarettes and money from under the register. (*Id*. at 79:1–4.)  The same

man then slapped the owner in the face before all three men ran out of the store. (*Id*. at 79:3–8.)

According to the owner, one of the men had an object in his hand, "something like a gun or a

knife," but he did not describe the object in any detail or say whether the man pointed it or did

anything with it during the robbery. (*Id*. at 79:14.)

When the police arrived at the store, officers found a pack of cigarettes and cigars

scattered on the sidewalk. (*Id*. at 69: 8–21.)  The owner said they were the same ones the robber

took. (*Id*. at 82:3–8.)  The officers interviewed the owner and took fingerprints from the items

---

[3] This section is incorporated by reference into each of the discussions of claims set out  in this Petition.

[4] The trial transcript from the Circuit Court for the City of Winchester, abbreviated "Tr.," is attached as Exhibit 2.

that were dropped on the sidewalk. (*Id.* at 73:16–18, 86:1–5.) The police never recovered any weapon connected with the robbery. (*Id.* at 87:12–15.)

Sometime later, when police began investigating a woman named Cierra Owens about an unrelated crime, she implicated other individuals in the Caribbean Food Store robbery. (*Id.* at 92:3–6; 94:14–16.) Based on the new leads, police sent the fingerprint evidence recovered from the crime scene to the lab and provided five names for comparison: Darryl Jackson; Desmond King; Cierra Owens; Javon Johnson; and Dajuan Doleman. (*Id.* at 98:23–99:16.) The resulting forensic analysis produced a match to Dajuan Doleman. (*Id.* at 110:4–7.) None of the fingerprints matched to Jackson. (*Id.* at 112:21–113:7.) Further investigation led the police to Nicole Thompson and Javon Johnson, who both implicated Jackson.

On November 18, 2014, a grand jury indicted Jackson for four offenses in connection with the December 2012 Caribbean Food Store robbery:

> (1)     robbery, in violation of Virginia Code § 18.2-58;
>
> (2)     use or attempted use or threatening display of a firearm in the commission of a felony, in contravention of Virginia Code § 18.2-53.1;
>
> (3)     unlawful possession of a firearm by a convicted felon, in violation of Virginia Code § 18.2-308.2; and
>
> (4)     conspiracy to commit robbery, in contravention of Virginia Code §§ 18.2-58 and 22.

Jackson was arrested the same day and held without bond. On November 21, 2014, the Circuit Court appointed Matt Beyrau, Esq., to represent Jackson at trial.

**B.     The Trial**

Jackson's bifurcated trial lasted one day. During phase one, Jackson was tried and convicted for robbery, use of a firearm in the commission of a felony, and conspiracy to commit

a felony. In phase two, the same jury convicted Jackson for possession of a firearm by a convicted felon.

The Commonwealth called 11 witnesses during the first phase of the trial, including several police officers, the store owner, and the forensic technician who analyzed the fingerprints pulled from the cigars and cigarettes. Those witnesses provided testimony about the background and context for the police investigation of the Caribbean Food Sore robbery but did not identify Jackson as a participant in the robbery.

The store owner told the jury that the robbers "had a gun." (*Id*. at 81:6.) But when asked about the object, the owner vaguely said one of the men was holding "something like a gun *or a knife*." (*Id*. at 79:14.) The owner did not see that man's face, did not know what the man was doing with the object in his hand, and did not testify that the man pointed the object at anyone or threatened to use the object to shoot. (*Id*. at 78:1–5, 79:18–80:3.) And although the owner recognized Jackson as someone he'd seen on Kern Street, he could not say that Jackson was there on the night of the robbery. (*Id*. at 83:4–11.)

There was no physical evidence linking Jackson to the crime. He did not match the set of fingerprints that were recovered by police after the robbery. (*Id*. at 112:17–23, 113:1–7.) The object used in the robbery—"a gun or a knife"—was never found. (*Id*. at 79:14.)

1. **Accomplice Testimony**

The Commonwealth's case linking Jackson to the robbery came from the testimony of Cierra Owens, Nicole Thompson, and Javon Johnson, who each also admitted some involvement in the events that night.

Cierra Owens testified at trial that Jackson and others were at her house on the night of the robbery. (*Id*. at 114:16–115:17, 116:1–16.) She told the jury that Jackson brought up going

to "hit a lick," which Owens understood to mean "break into cars, robbing people." (*Id*. at 118:8–11.) Owens asked to go with him, but Jackson said no. (*Id.* at 118:12–18.) Owens told the jury that Jackson, Javon Johnson, and a third man then left Owens's home. (*Id*. at 118:19–23, 119:1.) Owens testified that she did not see Jackson with a gun before he left the house, nor did she see Jackson retrieve one before he left. (*Id*. at 119:20–23.) Owens told the jury that the three men returned to the house with cash and cigarettes and took pictures with the cash. (*Id*. at 120:15–17, 121:4–23.) Owens also testified that after the men returned she saw something that looked like a gun on Jackson's waistband. (*Id*. at 119:23–120:6.) She admitted that she took $25 of the cash and a share of the stolen cigarettes. (*Id.* at 121:4–12.)

Owens admitted that she had multiple felony charges pending in a credit-card theft scheme when she spoke with the authorities about the robbery. (*Id.* at 123:18–124:13.) She testified that the Commonwealth had secured her testimony by agreeing to release her from probation on a current conviction and promising not to charge her with possession of stolen goods in connection with the robbery. (*Id.* at 122:1–21.)

Nicole Thompson, a former romantic associate of Jackson's, also testified that she was at Owens's house on the night of the robbery. (*Id.* at 132:4–21.) Thompson told the jury that Jackson said he had to go get some money. (*Id.* at 138:22.) She said Cierra Owens, Dajuan Doleman, and Javon Johnson left the house at the same time. (*Id.* at 138:6–11.) They later returned to with cigarettes, blunts, and money. (*Id*. at 134:20–21.) The cigarettes were distributed between everyone who was at the house, the money was divided up among a smaller group, and they took pictures with their cell phones. (*Id.* at 134:22–135:4, 140:5–7.) Thompson testified that she did not see Jackson with a firearm before or when he left the house, but he had a gun on his hip when he returned. (*Id*. at 133:20–23, 134:1–19.)

Thompson admitted that, like Owens, she had multiple felony charges pending in a credit-card fraud scheme to which she had pleaded no contest.  (*Id.* at 141:5–11; 143:14–16.) She testified that the Commonwealth had secured her testimony by promising to help with the sentencing on those charges.  (*Id.* at 141:12–21.)  She also testified that she had a newborn baby, for whom she would "do anything to stay out of jail."  (*Id.* at 141:22–142:7.)[5]

Javon Johnson told the jury that he was one of the three robbers.  He testified that he was with Jackson, Doleman, Owens, Nicole Thompson, and a man named Desmond King on the night of December 11, 2012.  (*Id.* at 145:19–20.)  Jackson allegedly said, "let's go get some money," which Johnson understood to refer to robbery.  (*Id.* at 146:3–11.)  Johnson was the only witness to testify that he saw Jackson with a gun before the men left the house.  (*Id.* at 146:17–20.)  When asked by the Commonwealth what color Jackson's gun was, Johnson equivocated, suggesting, "I want to say grey and black, silver and black."  (*Id.* at 146:22–23.)  Johnson said that Jackson put the gun in his waistband, and then Johnson, Jackson, and Doleman left the house together.  (*Id.* at 146:17–18, 147:4–6.)

Johnson testified that he was familiar with the Caribbean Food Store and he had known the owner for a long time.  (*Id.* at 147:13–16.)  He said he had been to the store with Jackson once or twice before the robbery.  (*Id.* at 154:1–5.)  Johnson testified that Jackson and Doleman entered the Caribbean Food Store together first, and then he entered "like seven minutes later and that is when they were robbing [the owner]."  (*Id.* at 147:22–23, 148:1–2.)  Johnson told the jury that when he entered, the owner was sitting in a chair behind the counter while Jackson was

---

[5] Notably, Thompson did not mention that she had earlier told investigators that Cierra Owens was also involved in the robbery.  *See* Discovery Materials at 40 (attached as Exhibit 3).  She also told them that Jackson and Owens had been "plotting together to make some money," that Owens "may have been a 'look out' at the very least," and that "Jackson and Owens returned [from the robbery] with Javon Johnson and 'Doodie' (AKA: Dajuan Doleman)."  *Id.* at 41, 51.

demanding money and holding a gun. (*Id*. at 148:4.) He did not say what Jackson was doing with the object or whether it was pointed at the owner. Johnson could not remember which hand Jackson was holding the purported gun in. (*Id*. at 148:5–6.) Johnson told the jury that when the owner stood up, they pushed him down into a chair and then Doleman got the money and cigarettes from behind the counter and the men left. (*Id*. at 148:7–15.) Johnson testified that when the men returned back to Owens's house they split up the money. (*Id*. at 148:21–23.) He also said that he gave $20 to Owens, and the cigarettes were divided among everyone at the house. (*Id*. at 149:5–10.) Johnson also told the jury that he could not remember where the gun was when Jackson returned back to the house. (*Id*. at 149:11–13.)

Johnson admitted that the Commonwealth had induced him to testify against Jackson with a plea agreement for the charges related to the robbery. (*Id.* at 149:20–150:9.) He also admitted that the police had found a stolen gun at his girlfriend's house, but denied that the weapon was related to the robbery. (*Id.* at 150:10–16.) The Commonwealth had agreed that, in exchange for his testimony, Johnson would be charged with only grand larceny rather than robbery and prosecutors would not charge him for possessing that stolen firearm. (*Id.* at 155:8–11.)

### 2. Motion to Strike the Evidence in Phase One

At the end of the Commonwealth's case in the first phase, Jackson's trial counsel moved to strike the Commonwealth's charges against Jackson. For the robbery charge, counsel argued the evidence failed to show Jackson was a participant in the robbery. (*Id.* at 158:9–159:4.) On that basis, counsel also argued the conspiracy charge should be struck. (*Id.* at 159:5–9.) Lastly, Jackson's counsel moved to strike the § 18.2-53.1 charge for use of a firearm in the commission of a felony because (1) the Commonwealth failed "to establish that actually a firearm was used,

in this robbery" and (2) the Commonwealth failed "to establish proof of the underlying felony." (Tr. 159:16–160:9.)  The court denied the motion.  (*Id*. at 160:10.)

Jackson's trial counsel did not put on any evidence.  (*Id.* at 163:17–18.)  Instead, he simply renewed the motion to strike the evidence "for the same reasons stated."  (*Id.* at 163:20–23.)  The court again denied the motion.  (*Id.* at 164:1.)

### 3.    Jury Instructions and Conviction in Phase One

Jackson's trial counsel did not object to any of the instructions read to the jury in the first phase of the trial.  (*Id.* at 164:11–15.)

Instruction Five provided the elements of the Commonwealth's § 18.2-53.1 use-of-a-firearm charge.  The court instructed the jury:

> The Defendant is charged with the crime of *using* a firearm while committing a robbery.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime.  One, that the Defendant *used* a firearm and, two, that the *use* was while committing a robbery.

(*Id.* at 168:9–14 (emphasis added).)  Although § 18.2-53.1 also covers the threatening display of a firearm during a robbery, the jury instruction did not mention display of any kind.  (*See id.*)

Instruction Six defined "firearm."  The court instructed the jury:

> A firearm is an instrument designed, made, and intended to expel a projectile by means of an explosion.  It is not necessary that the firearm be operable, capable of being fired, or have the actual capacity to do serious harm.

(*Id.* at 168:23–169:4.)

Instruction Seven explained that the "firearm" used in committing the 18.2-53.1 offense need not be an actual gun.  The court instructed the jury:

> Where a victim reasonably perceived a threat or intimidation by a firearm, it is not necessary that the object in question was in fact a firearm.

(*Id.* at 169:5–8.)

Although the court gave a generic instruction regarding witness credibility, (*see id.* at 169:12–6), the court did not give—and Jackson's counsel did not ask for—an instruction regarding the use of accomplice testimony to convict Jackson.

During deliberations in phase one, the jury sent a note to the judge with three questions:

1.    "What was [the owner's] answer regarding the alleged object in the Defendant's hand?"

2.    "What was Javon Johnson's statement about the use of a firearm?"

3.    "Define use while committing a robbery."

(*Id*. at 188:13–23.)  The court declined to answer the first and second questions for the jury.  (*Id.* at 188:16–22.)  As for the third question, the court gave the following response, without any objection from Jackson's lawyer:

> The third question: "Define use while committing a robbery." That means the use of a firearm, for instance, that it had to be *displayed* incident to the crime. In other words, if the victim can't see it, it wasn't a factor.  It would have had to have been *displayed* so that under circumstances that it is probable or in this case beyond a reasonable doubt that the Defendant saw it, *the victim saw it*.  **That is what use means.**  It would have had to have been *displayed* as part of the crime. If it was hidden it wasn't part of the crime.  That is separate because the victim would never know it was there.

(*Id*. at 190:6–17 (emphases added).)

After further deliberation, the jury returned a guilty verdict against Jackson on all three counts.  (*Id*. at 193:12–18.)

### 4.     Trial, Instructions, and Conviction in Phase Two

Immediately after the guilty verdict in phase one, phase two began for the § 18.2-308.2 felon-in-possession charge.  In his opening statement in the second phase, Jackson's counsel simply told the jury:

> I would ask you to consider finding him not guilty but I realize
> what you have already done based on the evidence you have seen
> so far so I won't repeat the arguments I have made earlier.  I would
> ask you to consider finding him not guilty on this charge.

(*Id*. at 199:9–14.)  The Commonwealth's only evidence in the second phase was a sentencing order showing that Jackson was a convicted felon.  (*Id*. at 196:21–23.)  Jackson's counsel did not present any additional evidence or testimony.  (*Id*. at 200:11–14.)

At the conclusion of phase two, Jackson's counsel made a motion to strike "for the reasons I stated in the previous case."  (*Id*. at 201:1–3.)  He told the court, he did not "want to go through them all again but [he] would move to strike on the grounds that really the evidence never established that Mr. Jackson actually committed the robbery."  (*Id*. at 201:3–15.)  The court denied the motion.  (*Id*. at 201:15–16.)

Rather than instructing the jury with a full set of new instructions, the court told the jury that several instructions from the first phase would still apply:  Instruction One (presumption of innocence); Instruction Two (circumstantial evidence); and Instructions Eight through Twelve (general instructions about witness testimony and credibility).  (*Id*. at 202:11–12.)  The court did not tell the jury that the firearm-related instructions from the first phase applied.  Nor did the court re-define "firearm" for the § 18.2-308.2 felon-in-possession charge.  Instead, the court offered Instruction Thirteen to describe the elements of that offense:

> The Defendant is charged with the crime of possessing a firearm
> after having been convicted of a felony.  The Commonwealth must
> prove beyond a reasonable doubt each of the following elements of

that crime. One, that the Defendant knowingly and intentionally possessed a firearm; and two, that the Defendant had previously been convicted of a felony.

(*Id.* at 203:6–11.) Jackson's counsel did not object nor did he offer any other instructions for the phase two deliberations. (*Id*. at 201:19–204:22.)

After deliberations, the jury found Jackson guilty of possession of a firearm by a convicted felon in violation of Va. Code § 18.2–308.2. (*Id.* at 205:18–206:1.) The circuit court subsequently sentenced Jackson to a total of 15 years in prison with 1 year suspended for the four convictions. (*Id.* at 244:5–23.) The circuit court appointed the same trial counsel to represent Jackson in his direct appeal. (*Id.* at 246:4–8.)

### C.    Direct Appeal

On appeal to the Court of Appeals of Virginia, Jackson raised three assignments of error: (1) the circuit court erred in denying Jackson's motions to strike based on insufficient evidence that Jackson was a perpetrator of the robbery; (2) the circuit court erred in denying Jackson's motion to strike the § 18.2-53.1 use of a firearm charge based on insufficient evidence that a gun was involved in the robbery; and (3) the circuit court erred in denying Jackson's motion to strike the § 18.2-308.2 felon in possession of a firearm charge based on insufficient evidence that a gun was used in the robbery.

On November 5, 2015, the Court of Appeals of Virginia denied Jackson's appeal. (Ex. 4 at 1.)[6]   The Court of Appeals concluded that the Commonwealth's evidence was sufficient to find Jackson guilty of robbery and to show the object was a gun. (*Id.* at 3.) As for the specific claim that there was insufficient evidence to show Jackson possessed an actual firearm under

---

[6] The Court of Appeals' denial of Jackson's direct appeal is attached as Exhibit 4.

§ 18.2-308.2, the Court of Appeals noted Jackson "failed to present this issue to the trial court."

(*Id.*)  That failure barred consideration of the issue on appeal.  (*See id.*)

On July 29, 2016, the Supreme Court of Virginia refused Jackson's petition for appeal.[7]

### D.      State Habeas Proceeding

Jackson, proceeding *pro se*, timely filed his petition for writ of habeas corpus with the

Supreme Court of Virginia on June 26, 2017.  Jackson's sole claim alleged ineffective assistance

of counsel by way of his trial counsel's failure to challenge the sufficiency of the

Commonwealth's evidence that he possessed a firearm as a person convicted of a felony under

Code § 18.2-308.2. That error prejudiced Jackson because there was a reasonable probability that

a properly framed motion to strike the evidence would have been granted.[8]

The Supreme Court of Virginia appointed Jackson a lawyer to brief and argue the *pro se*

claim.  Jackson, through his appointed State habeas counsel, sought leave to file an amended

petition with additional claims, but the Supreme Court denied the request.  Jackson asked the

Court to reconsider the denial, but that request was denied, too.[9]

On May 31, 2018, the Supreme Court of Virginia issued a 4-3 decision dismissing

Jackson's original *pro se* petition.  *See Jackson v. Clarke*, 2018 WL 2440266 (Va. May 31,

2018).  The Court acknowledged that when Jackson's trial counsel moved to strike the § 18.2-

308.2 felon-in-possession charge, the lawyer "did not parse the differences between the proof

required under that statute and proof required under other firearm statutes, notably the statute

---

[7] The Supreme Court of Virginia's refusal of Jackson's direct-appeal petition is attached as Exhibit 5.

[8] Jackson's *pro se* State habeas petition is attached as Exhibit 6.

[9] The Supreme Court of Virginia's denial of the first request to amend is attached as Exhibit 7, and the denial of the motion for reconsideration is attached as Exhibit 8.

that prohibits the use of a firearm in the commission of a felony, Code § 18.2-53.1." *Id.* at *1. The Court also noted that the term "firearm" refers to different objects in those separate provisions. *Id.* at *2.

Even so, the Court found that a properly framed motion would have been denied based on the evidence at trial. *Id.* at 3. Specifically, the Court determined that the evidence showed "Jackson pointed a firearm at the store owner and demanded money." *Id.* The store owner's subsequent compliance showed "an implied assertion of the firearm's functionality." *Id.* When combined with witness testimony that Jackson had possessed a gun that evening, the evidence raised a fact question for the jury to decide as to whether the object was the type of firearm covered by § 18.2-308.2. *Id.* at 3. The Supreme Court thus concluded Jackson was not prejudiced by his attorney's failure to properly challenge the sufficiency of the evidence. *Id.*

Justice Powell, joined by Chief Justice Lemons and Justice Goodwyn, dissented. The dissent pointed out that there was "scant, arguably no, evidence to support a finding by a rational factfinder that the defendant made an implied assertion that the object was a firearm." *Id.* at *3– 4. At best, the evidence amounted to "a vague description and no direct evidence of a verbal threat or Jackson pointing the object at the victim." *Id.* at *3. The dissent thus reasoned that a reasonable attorney would have challenged "the sufficiency of the evidence to support the felon-in-possession charge," and there was "a reasonable probability the outcome of the proceeding would have been different." *Id.* The three dissenters would have granted Jackson's State petition. *Id.* Jackson timely sought rehearing, but the Supreme Court of Virginia denied that request on October 5, 2018.[10]

---

[10] The Supreme Court of Virginia's denial of Jackson's petition for rehearing is attached as Exhibit 9.

# LEGAL STANDARDS

The following legal standards govern the Court's review of Jackson's claims.

## *Strickland v. Washington*

Allegations of the denial of the Sixth Amendment right to counsel are governed by the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *First*, the petitioner must show, "in light of all the circumstances, the identified acts or omissions [by counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Counsel's performance becomes constitutionally deficient when it falls "below an objective standard of reasonableness." *Id.* at 688. *Second*, the petitioner must demonstrate prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

To show a "reasonable probability" of a different outcome, the petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Instead, a court may believe that it is more probable than not that the outcome would *not* have changed, even if counsel had performed in the manner a petitioner alleged, and still find that the petition has satisfied the "prejudice" showing. *Id.* at 693–94 ("The result of a proceeding can be rendered unreliable, and hence the proceeding unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."). Prejudice is more likely where, as here, the prosecution's case is relatively weak; that is, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

## 28 U.S.C. § 2254(d)

This Court's review and ability to grant relief depends, in part, on the litigation history of the asserted claims.  In particular, 28 U.S.C. § 2254(d) limits a court's ability to grant relief on claims "that [were] adjudicated to the merits in State court proceedings."  But that does not mean federal habeas review requires rubberstamping a State court decision.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[I]n the context of federal habeas, deference does not imply abandonment or abdication of judicial review.").

In assessing a petitioner's claims, a district court must accept the petitioner's allegations as true.  *See Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009) (reversing district court ruling when "the district court failed to accept as true the allegations of his Amended Petition" and "prematurely rejected the credence and relevance" of the petitioner's allegations); *Walker v. True*, 399 F.3d 315, 319–20 (4th Cir. 2005) (vacating district court ruling that failed to accept as true petitioner's allegations, because "whether [petitioner] has 'stated a claim' in his petition depends on whether he has set forth facts that, if true, would demonstrate" entitlement to relief).

Even with regard to claims to which § 2254(d) does apply, the statute does not restrict a court's ability to grant relief on a claim decided by the State court if that adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  A State court makes an "unreasonable application of clearly established Federal law" if it "correctly identifies the governing legal principles from [Supreme Court] decisions but unreasonably applies [them] in the particular case."  *Bell v. Cone*, 535 U.S.

685, 694 (2002).  The "increment of incorrectness" need not be large—it "must only be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (en banc).  A petitioner's challenged based on an "unreasonable determination" of the facts may be based on the claim that the finding is unsupported by sufficient evidence.  *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

### *Martinez v. Ryan*

A State prisoner seeking habeas relief generally must raise any claim he has in State court and comply with the rules for exhausting the State's habeas process.  Failure to do so constitutes "procedural default," which bars a federal court's consideration of such claims.  *See Coleman v. Thompson*, 501 U.S. 722, 750–55 (1991).  The Supreme Court established a "narrow" exception to the procedural-default bar in *Martinez v. Ryan*, 566 U.S. 1, 9 (2012):  If the state prisoner was required to wait to raise claims that his trial counsel was ineffective until the State habeas proceedings, and he proceeded *pro se* or had ineffective counsel during the State habeas proceedings, then the inmate will not be barred from raising those claims in his federal petition. *See id.*  The Fourth Circuit has summarized the rule and its requirements:

> *Martinez* held that a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the cause for default consists of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding.

*Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (internal quotations and alterations omitted).

## Firearms Under Virginia Law

Jackson's prosecution involved two separate statutes referring to firearms:  Virginia Code § 18.2-53.1—a prohibition on the use or threatening display of a firearm during certain crimes— and § 18.2-308.2—a prohibition on the possession of a firearm by convicted felons.  Although both laws use the word "firearm," the Supreme Court of Virginia has made clear that they concern different objects. Thus, what qualifies as a "firearm" under one statute does not necessarily qualify under the other.

Virginia Code § 18.2-53.1 prohibits the use or threatening display of a firearm during the commission of certain enumerated felonies:

> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit [certain felonies, including robbery].

As a matter of deterrence, the law "not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm." *Holloman v. Commonwealth*, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980).  The statute thus proscribes both "the use or display of an *actual firearm* that has the capability of expelling a projectile by explosion" and "the use or threatening display of an instrumentality that has the *appearance* of having the capability of an actual firearm."  *Startin v. Commonwealth*, 281 Va. 374, 379, 706 S.E.2d 873, 877 (2011) (first emphasis added).  Accordingly, a § 18.2-53.1 "firearm" must be an operable gun or an object that is not an operable gun but is used or threateningly displayed to make it appear to be one.  *See Holloman*, 221 Va. at 199, 269 S.E.2d at 358; *see also Startin*, 281 Va. at 383, 706 S.E.2d at 879 (Koontz, S.J., concurring) (acknowledging a conviction under § 18.2-53.1 cannot stand when "the defendant used or

displayed an instrument which lacked the capability of expelling a projectile by explosion and also lacked the appearance of having that capability").

In contrast, Virginia Code § 18.2-308.2 prohibits the mere possession of a firearm by a convicted felon:

> It shall be unlawful for . . . any person who has been convicted of a felony . . . whether such conviction or adjudication occurred under the laws of the Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any firearm or ammunition for a firearm . . . .

The law "focuses on the General Assembly's determination that certain individuals—felons—are unfit to possess firearms, even for lawful purposes." *Armstrong v. Commonwealth*, 263 Va. 573, 582, 562 S.E.2d 139, 144 (2002). For an object to qualify as a "firearm" under § 18.2-308.2, it must be an "instrument designed, made, and intended to fire or expel a projectile by means of explosion." *Id.* at 583, 562 S.E.2d at 145. Prosecutors need not "prove the instrument was 'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'" *Id.* at 584, 562 S.E.2d at 145. Thus, firearm with a faulty firing pin, missing parts, or in general disrepair preventing its immediate use still qualifies as a "firearm" under the statute. *See id.*; *see also Barlow v. Commonwealth*, 739 S.E.2d 269, 270-71 (Va. Ct. App. 2013) (upholding conviction under § 18.2-308.2 despite a pistol's "lack of a barrel and its rusty and unmaintained condition").

The Supreme Court's teaching on these laws shows that not every alleged gun will qualify as a "firearm" under both statutes. *Actual firearms*—objects designed, made, or intended to fire or expel a projectile by an explosion—satisfy § 18.2-308.2 regardless of their operability. *See Armstrong*, 263 Va. at 584, 562 S.E.2d at 145. In contrast, actual firearms may satisfy § 18.2-53.1, but only if they are operable or employed by the defendant to give it that appearance. *See Startin*, 281 Va. at 379, 706 S.E.2d at 877. *Non-firearms*—objects not designed,

19

made, or intended to fire or expel a projectile by explosion—can never satisfy § 18.2-308.2. *See, e.g.*, *id.* at 382, 706 S.E.2d 878 (explaining that replica guns and BB guns are not "firearms" under § 18.2-308.2). In contrast, non-firearms may satisfy § 18.2-53.1, but only if they are employed by the defendant to give it the "the appearance of having a firing capability." *Id.* at 383, 706 S.E.2d at 877. The following chart outlines these distinctions:

| Type of Instrument | § 18.2-53.1 "Firearm" | § 18.2-308.2 "Firearm" |
|---|---|---|
| Operable Actual Firearm | Yes | Yes |
| Inoperable Actual Firearm | Only if given the appearance of operability | Yes |
| Non-Firearm Instrument | Only if given the appearance of operability | No |

## CLAIMS PRESENTED TO THE STATE COURT

I.  **Jackson's right to effective assistance of counsel was violated when his trial counsel failed to move to strike the § 18.2-308.2 felon-in-possession charge based on insufficient evidence that Jackson possessed an actual firearm.**

Jackson maintains that his trial counsel rendered ineffective assistance by failing to move to strike the § 18.2-308.2 felon-in-possession charge based on the Commonwealth's failure to present sufficient evidence that he possessed an actual firearm. The only evidence suggesting a firearm were vague descriptions of a "gun" (or possibly a knife), which cannot sustain a conviction under that statute. Counsel should have moved to strike the charge, and Jackson was prejudiced by that failure.

This Court should not defer to the Supreme Court of Virginia's rejection of this claim. The Supreme Court's decision added a fact not found in the record: that Jackson pointed a gun at the store owner. Nobody ever said that at trial—not even the store owner. The Supreme Court

thus made an unreasonable determination of fact when it held that Jackson was not prejudiced by his lawyer's failure to make the motion to strike.

A.    **Conviction under § 18.2-308.2 requires proof of an actual firearm.**

For an object to qualify as a "firearm" under Va. Code § 18.2-308.2, it must be an "instrument designed, made, and intended to fire or expel a projectile by means of explosion." *Armstrong*, 263 Va. at 583, 562 S.E.2d at 145.  Objects not designed, made, or intended to operate like an actual gun do not qualify as firearms under the statute.  *See, e.g.*, *Startin*, 281 Va. at 382, 706 S.E.2d at 878 (explaining that replica guns and BB guns are not sufficient to convict under § 18.2-308.2).

Absent introducing the object itself into evidence, prosecutors can prove the "actual firearm" requirement of § 18.2-308.2 with witness testimony, but only if the testimony suggests the object's operability as a real gun.  For example, a verbal "threat, upon presenting the weapon, to kill" can be sufficient proof, because the threat shows "an implied assertion that the object was a functioning weapon."  *Redd v. Commonwealth*, 511 S.E.2d 436, 438 (Va. Ct. App. 1999).  Similarly, pointing a gun-like object at the victim, even without a verbal threat, sends the same message.  *See Jordan v. Commonwealth*, 286 Va. 153, 158, 747 S.E.2d 799, 801 (2013).  And witness testimony identifying the object as a specific make or model of gun can satisfy the "actual firearm" element of § 18.2-308.2.  *See id.*

In all events, however, testimony that vaguely identifies an object as a gun does not satisfy the definition of "firearm" under § 18.2-308.2.  *See Redd*, 511 S.E.2d at 438 ("The store clerk's description of the object brandished by Redd as 'a long black gun' is insufficient, alone, to prove that the object possessed 'the ability to expel a projectile by the power of an

explosion.'"); *see also Jordan*, 286 Va. at 158, 747 S.E.2d at 801 (confirming "that the holding in *Redd* is still the law of this Commonwealth").

**B.** **Jackson's trial counsel was deficient in failing to move to strike the § 18.2-308.2 charge, because no evidence suggested the object in question was an actual firearm.**

At the conclusion of the second trial, Jackson's trial counsel moved to strike the felon-in-possession charge "for the reasons [he] stated" during the first phase. (Tr. 200:23–201:3.) Instead of explaining those reasons, he conceded, "I don't want to go through them all again, but I would move to strike on the grounds that really the evidence never established that Mr. Jackson actually committed this robbery." (*Id.* at 201:3–6.) Counsel did not question whether the object alleged to be a gun met the statutory standard for a felon-in-possession charge. The circuit court denied the motion. (*Id.* at 201:16–17.)

On direct appeal, Jackson's trial lawyer—who had been appointed to represent him in his appeals—argued that the circuit court had erred in denying the motion to strike the felon-in-possession charge "because the evidence did not establish he possessed a firearm, as opposed to a knife."[11] The Court of Appeals of Virginia denied that assignment of error based on the failure to present that issue to the circuit court.

Jackson's counsel should have moved to strike the § 18.2-308.2 charge based on insufficient evidence that Jackson had possessed a "firearm" under that statute. That motion would have been based on well-established precedent about the meaning of that term. The motion "would have carried some substance," and thus the failure to lodge the request shows deficient performance. *Tice v. Johnson*, 647 F.3d 87, 104 (4th Cir. 2011). Trial counsel's late

---

[11] Jackson's counseled petition for direct appeal is attached as Exhibit 10.

attempt to raise this issue in the Court of Appeals reinforces that the failure to move in the circuit court was not a reasonable trial strategy.

### C.    Jackson was prejudiced by his trial counsel's deficient performance.

The failure of Jackson's trial counsel to move to strike the § 18.2-308.2 charge "undermine[s] confidence in the outcome" of Jackson's trial.  *See Strickland*, 466 U.S. at 694. Had trial counsel so moved, there is a reasonable probability that the circuit court would have granted the motion and Jackson would not have been convicted of that offense.  *See Grueninger v. Director, Va. Dep't of Corrs.*, 813 F.3d 517, 530 & n.9 (4th Cir. 2016) (discussing *Strickland* prejudice prong in context of failure to file motions).

Had counsel moved to strike the evidence as to the § 18.2-308.2 charge, the circuit court would have determined whether the Commonwealth's evidence could prove Jackson possessed an "instrument designed, made, and intended to fire or expel a projectile by means of an explosion." *Armstrong*, 263 Va. at 583, 562 S.E.2d at 145.  In contrast to cases where Virginia courts have sustained convictions based on circumstantial evidence of an "actual" firearm, the Commonwealth's case against Jackson had at least four critical holes in it.

*First*, no actual firearm was introduced into evidence.  To be sure, the Commonwealth need not present the physical object alleged to be a gun to obtain a guilty verdict, but the lack of physical proof reinforced the need for sufficient witness testimony.

*Second*, witnesses testified only that they saw Jackson with a "weapon" or a "gun."  (Tr. 119:5–120:11, 134:6–9, 146:17–23.)  In fact, the store owner testified that the object looked "something like a gun *or a knife*." (*Id.* at 79:13–15.)  But vague and generic descriptions are "insufficient, alone, to prove that the object possessed the ability to expel a projectile by the

power of an explosion." *Redd*, 511 S.E.2d at 438 (observing that the description of a "a long black gun," by itself, could not satisfy the firearm requirement of § 18.2-308.2).

*Third*, no witness identified the alleged weapon as any particular type of actual firearm. The closest any witness came to any specificity was Johnson, who testified that the object was a "gray and black" or "silver and black" handgun. (*Id.* at 146:20–23.) That description is no better than the insufficiently vague "long black gun." And it does not approach the specificity deemed sufficient in other cases. *See, e.g.*, *Jordan*, 286 Va. at 158, 747 S.E.2d at 801 ("The reference to a 'Raven'"—"a well-known, compact, .25 caliber semi-automatic pistol"—"indicates a specific weapon that was designed, made, and intended to fire or expel a projectile by means of an explosion.").

*Fourth*, because testimony established only an object appearing to be a firearm, conviction required additional evidence showing that the object was an actual firearm. *See Redd*, 511 S.E.2d at 438. But there was no threat from the alleged gunman, either verbal or nonverbal. The store owner never saw the gunman point anything at him. (Tr. 79:18–80:6.) No witness suggested that the instrument was handled before, during, or after the robbery to imply that it was designed, made, or intended to operate as a firearm. And no other evidence suggested that the object was, in fact, an actual gun. *See Jordan*, 286 Va. at 161–62, 747 S.E.2d at 803 (Powell, J., dissenting) (observing "that whether an instrument was designed, made, and intended to fire or expel a projectile by means of an explosion cannot be discerned by merely looking at the instrument" and citing examples of "type[s] of evidence [that] could be used to validate an eyewitness's description of an object").

At bottom, the Commonwealth failed to offer critical proof at the heart of the § 18.2-308.2 charge—something more than mere appearance. Even if the proof at trial suggested a

"[s]uspicion of guilt, however strong, or even a probability of guilt," that is not enough to sustain

a conviction. *Rowland v. Commonwealth*, 281 Va. 396, 401, 707 S.E.2d 331, 334 (2011).

Consequently, there is a reasonable probability that the circuit court would have granted the

motion to strike the felon-in-possession charge had Jackson's counsel made the request. The

failure to do so fundamentally undermines the confidence in the outcome of Jackson's trial, thus

establishing prejudice. *See Strickland*, 466 U.S. at 694.

> **D.** **The Supreme Court of Virginia's rejection of this claim was based on an unreasonable determination of facts, because there was no evidence that Jackson pointed a firearm at the store owner.**

The Supreme Court of Virginia agreed with Jackson's explanation of the law behind his

*pro se* claim. The Court noted that "what constitutes a 'firearm' can vary depending" the

particular statutory provision. *Jackson*, 2018 WL 2440266 at *2. And the Court recognized that

Jackson's lawyer "did not parse the differences between the proof required under" § 18.2-308.2

in comparison to other firearm statutes, particularly the use-of-a-firearm offense in § 18.2-53.1.

*Id.* at *1. Even so, the Court concluded that Jackson could not show prejudice under *Strickland*

because a timely motion to strike the § 18.2-308.2 would not likely have been granted. In

reaching that conclusion, the Court found that "the evidence established Jackson pointed a

firearm at the store owner and demanded money." *Id.* at *3.

The Supreme Court's analysis of Jackson's claim hinged on an unreasonable

determination of facts. There simply was no evidence that Jackson pointed a gun at the store

owner. The owner testified that he saw "something like a gun or a knife" in one of the robbers'

hands, but he could not describe what that person was doing with the object. (Tr. 79:14–20.)

The prosecutor asked the owner, "What was he doing with what was in his hand?" (*Id.* at 79:18.)

The owner responded, "I don't know." (*Id.* at 79:19.) The prosecutor asked even more directly:

"Was he pointing something at you in his hand?" (*Id.* at 79:23.) But the store owner did not

answer the question. (*See id.* at 80:1-6.) And Johnson, the only witness who claimed to see

Jackson during the robbery, testified only that Jackson "had the gun saying give me the money."

(*Id.* at 148:4.) Nowhere in the trial record is there any evidence suggesting Jackson pointed the

firearm at anyone during the robbery.

The Supreme Court also suggested that "four separate individuals had the opportunity to

see the gun up close and described it unambiguously as a gun," further bolstering the suggestion

that the object was an actual firearm. *Jackson*, 2018 WL 2440266, at *3. But that does not

square with *Redd*—which the Supreme Court cited approvingly—where the testimony "I just

know it was a long black gun" could not alone satisfy § 18.2-308.2. What's more, Cierra Owens

and Nicole Thompson did not testify that they saw the weapon "up close" and the store owner

did not make an "unambiguous" description of the gun. To the contrary, the owner suggested the

object might have been a knife. (Tr. 79:14.) And none of the witnesses testified that they had

any familiarity with firearms at the time of the robbery, so the jury could no more rely on their

descriptions than the inexperienced store clerk's in *Redd*.[12]

Instead, as the dissent explained, "neither the store owner nor Johnson testified that the

[gunman] pointed the object at the store owner or made any gestures or threats with the object."

*Jackson*, 2018 WL 2440266, at *4 (Powell, J., dissenting). The Commonwealth presented

"scant, arguably no, evidence to support a finding by a rational factfinder that the defendant

---

[12] To be clear, the Supreme Court of Virginia did not suggest that the "unambiguous" witness identifications of "a gun" were alone sufficient to show the object was a firearm under § 18.2-308.2. Instead, the Supreme Court relied on that testimony in combination with the (factually erroneous) statement that Jackson pointed a gun at the storeowner. *See Jackson*, 2018 WL 2440266 at *3 ('[T]he testimony of these four individuals, *combined with the manner of the gun's use during the robbery*, sufficed for the case to go to the jury under existing precedent." (emphasis added)). The combination of those separate evidentiary findings reinforces that the "unambiguous" testimony by itself was insufficient.

made an implied assertion that the object was a firearm." *Id.* "At best," the trial record showed "the store owner's awareness of the instrument." *Id.* But that does not equate with the implied assertion of an operable firearm.

Although federal courts must defer to the decisions of State habeas courts, deference gives way when the State court's adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). That is exactly what happened here. The Supreme Court's finding that "Jackson pointed a firearm at the store owner," was "not merely an incorrect determination, but one sufficiently against the weight of evidence that is objectively unreasonable." *Gray v. Zook*, 806 F.3d 783, 790 (4th Cir. 2015) (internal quotation marks omitted).

Given the objectively unreasonable finding that Jackson pointed a gun—and the critical importance of that fact in the Supreme Court's rejection of Jackson's *pro se* claim—this Court is not barred from applying its own consideration to the claim. As explained above, that analysis leads to the conclusion that Jackson's trial counsel performed deficiently by failing to move to strike the § 18.2-308.2 charge, and Jackson was prejudiced by that failure.

## CLAIMS NOT PRESENTED TO THE STATE COURT

Although Jackson's *pro se* State habeas petition contained only one claim for relief, the *Martinez* exception to procedural default allows him to raise meritorious ineffective-assistance-of-counsel claims in this Court. *See supra* at 17. *Martinez* allows federal petitioners to bring otherwise defaulted ineffective-assistance-of-trial-counsel claims by showing (1) the claims are substantial; (2) they lacked counsel during their State habeas proceedings; (3) those proceedings were the first opportunity they had to raise such ineffectiveness claims; and (4) State law requires those claims to be raised during the State habeas process. *See Fowler*, 753 F.3d at 461.

Jackson satisfies the first *Martinez* requirement because, as outlined below, these claims have merit. *See Martinez*, 566 U.S. at 14 (explaining a "claim is a substantial one" when the petitioner can "demonstrate that the claim has some merit"). Jackson satisfies the second element because he was proceeding without counsel during the relevant period of his state habeas proceedings. Although the Supreme Court of Virginia appointed Jackson State habeas counsel several months after he filed the *pro se* petition, that lawyer was not allowed by the Supreme Court to add additional claims identified after review of the record. Jackson was thus left with the sole claim raised in his *pro se* petition.[13] The third and fourth requirements of *Martinez* are automatically satisfied in Virginia, where "state prisoners cannot raise ineffective-assistance-of-trial-counsel claims on direct appeal." *Fowler*, 753 F.3d at 462.

II.    **Jackson's right to effective assistance of counsel was violated when his trial counsel failed to request a jury instruction defining "firearm" for the § 18.2-308.2 felon-in-possession charge.**

Jackson's counsel provided ineffective assistance by failing to request a proper instruction defining "firearm" under the felon-in-possession statute. The circuit court did not give any instruction on the meaning of that term under § 18.2-308.2. As explained above, *see* Claim I, the felon-in-possession statute covers only actual firearms. Jackson's lawyer should have offered an instruction making that clear, and Jackson was prejudiced by counsel's failure to do so.

A.    **The felon-in-possession statute applies only to actual firearms.**

The type of firearm covered by § 18.2-308.2 must be an "instrument designed, made, and intended to fire or expel a projectile by means of explosion." *Armstrong*, 263 Va. at 583, 562

---

[13] Although the Supreme Court did not explain its denial of the amendment requests, it may have denied the motions because Jackson's State habeas deadline was June 29, 2017—more than five months before the Court appointed counsel to argue the single claim. *See* Va. Code § 8.01-654(A)(2).

S.E.2d at 145.  Objects that are not actual guns by design or operation, like BB guns or replica

guns, are not "firearms" under § 18.2-308.2.  *See Startin*, 281 Va. at 382, 706 S.E.2d at 878.

That stands in contrast to the "firearm" that can satisfy the use-of-a-firearm statute, which can

include objects employed to give "the appearance of having firing capability."  *Id.*  Thus, when

one defendant stands trial for both §§ 18.2-308.2 and 18.2-53.1, the answer to the "firearm"

element of one offense does not necessarily resolve the "firearm" element of the other.  *See

Jackson*, 2018 WL 2440266, at *2 ("Jackson correctly notes that what constitutes a 'firearm' can

vary depending on the statute.")

**B.      Jackson's trial counsel was deficient in failing to offer an instruction defining
"firearm" under § 18.2-308.2.**

At the conclusion of the second phase of trial, the circuit court instructed the jury on the

§ 18.2-308.2 felon-in-possession charge.  The court reminded the jury that "you have your

instructions from the last proceeding," and highlighted Instructions One, Two, Eight, Nine, Ten,

Eleven, and Twelve.  (Tr. 202:11–12.)  The court omitted mention of Instructions Six and Seven,

which defined "firearm" for the § 18.2-53.1 use-of-a-firearm statute.  The court then gave

Instruction Thirteen, which detailed the elements of § 18.2-308.2.  (*Id*. at 203:4–20.)  That

instruction included the element that "the defendant knowingly and intentionally possessed a

firearm," but did not define "firearm."  (*Id*. at 203:9.)

The circuit court did not explain why it failed to define "firearm" under § 18.2-308.2.  It

appears, however, that the court assumed a finding of a "firearm" under § 18.2-53.1 during the

first phase of trial collaterally estopped the defense from arguing that the weapon was not a

"firearm" under § 18.2-308.2.  (*See* Tr. 187:18–20 ("We do have something called collateral

estoppel.  I anticipate any subsequent trial would be pretty short based upon what this jury

does.").)  That explanation flatly contradicts the clear distinction between the "firearm"

requirements of the two statutes, which allows that an instrument could satisfy one but not the other.  *See, e.g.*, *Startin*, 281 Va. 382, 706 S.E.2d at 878.

Throughout the proceedings, Jackson's trial counsel did not object and offered no alternative instructions.  The jury deliberated whether Jackson violated § 18.2-308.2 without any instruction as to the specific instrument that qualifies as a "firearm" for that possession charge.  The jury then found Jackson guilty.  (Tr. 205:18–206:1.)

Jackson's trial counsel was deficient in that failure.  The term "firearm" under the felon-in-possession statute is not necessarily coextensive with lay understanding.  And the only instructions the jury did receive on "firearm" during the first phase of trial conflicts with the meaning for purposes of § 18.2-308.2.  *Compare Armstrong*, 263 Va. at 583, 562 S.E.2d at 145 (defining "firearm" under § 18.2-308.2 as "any instrument designed, made, and intended to fire or expel a projectile by means of explosion"), *with* Tr. 169:5–8 ("Where a victim reasonably perceives a threat or intimidation by a firearm it is not necessary that the object in question was, in fact, a firearm.").  A proper instruction for the second phase of trial would have made clear to the jury exactly what kind of "firearm" qualified for the felon-in-possession statute.  Drawing on *Armstrong*, that instruction would have read:

> A "firearm" is an instrument designed, made, and intended to expel
> a projectile by means of an explosion.  It is not necessary that the
> firearm be operable, capable of being fired, or have the actual
> capacity to do serious harm.

Counsel was deficient in failing to request such an instruction, particularly when the same jury had just considered a different, broader definition for the same term.  *See Gerald v. Commonwealth*, 805 S.E.2d 407, 411 (Va. Ct. App. 2017) ("This narrow definition [of firearm] was expressly limited by the Supreme Court to prosecutions for Code § 18.2-308.2."); *cf., e.g.*, *State v. Lewis*, 337 P.3d 1053, 1056–57 (Utah Ct. App. 2014) (finding deficiency when counsel

failed to provide instruction defining "indecent liberties," because that term, "as used in the statute, is much narrower than what the plain meaning of the words in isolation might suggest to the average person"); *Debarge v. Stewart*, 39 F. App'x 577, 578 (9th Cir. 2002) (finding deficiency when counsel failed to request a jury instruction on a lesser included charge based on counsel's failure to understand the applicable law).

### C. Jackson was prejudiced by his trial counsel's deficient performance.

The prejudice analysis for defects in injury instructions follows two steps. *First*, the court asks whether the incorrect instruction should not have been given or whether a proper instruction should have been given. *See Hope v. Cartledge*, 857 F.3d 518, 523 (4th Cir. 2017). *Second*, if the jury should have been instructed differently, then the court asks whether there was "a reasonable probability that the outcome of the proceedings would have been different." *Id.*; *see also Strickland*, 466 U.S. at 694. In assessing the likelihood of that alternative outcome, the court should consider the overall weight of the evidence presented, the other instructions given, and whether the appropriate jury instruction could have altered the jury's consideration of the facts. *See Hope*, 857 F.3d at 523. Here, these factors show that Jackson was prejudiced by his lawyer's failure to seek an instruction on the meaning of "firearm" under § 18.2-308.2

***Proper Instruction.*** During the second phase of Jackson's trial, the jury considered only the § 18.2-308.2 felon-in-possession charge. Accordingly, the instruction should have told the jury that they could find Jackson guilty only if the instrument was an actual firearm. But the circuit court failed to give any instruction defining "firearm" for that charge.

The proposed instruction above would have informed the jurors that they could only convict if they found Jackson had possessed an actual firearm. The instruction properly states the law under *Armstrong*. It also was supported by the evidence at trial, which included the store

31

owner's testimony that the instrument might have been a knife—not an actual gun. (Tr. 82:23–79:17.)  And most importantly, the instruction was not covered by any other instruction during the second phase of trial.  In short, it would have been error for the circuit court to refuse the proposed instruction defining "firearm" under § 18.2-308.2.  *See Payne v. Commonwealth*, 292 Va. 855, 869, 794 S.E.2d 577, 584 (2016) (explaining a trial court errs when it refuses an instruction that (1) "correctly states the law," (2) "is supported by the evidence," and (3) is not "fully and fairly covered" by other granted instructions).   Absent counsel's deficient performance, the jury should have been instructed differently.

**Probability of a Different Outcome.**  Because Virginia requires jurors to return unanimous verdicts, *see* Va. Const. Art. I, § 8; Va. Code § 8.01-361, "the prejudice prong of *Strickland* is met where there is a reasonable probability that at least one juror would have struck a different balance."  *Hope*, 857 F.3d at 524 (quotation marks omitted); *see also Strickland*, 466 U.S. at 694.  In light of the proposed instruction defining "firearm" for the felon-in-possession charge, that probability is present here.

Without that additional instruction, the jury could draw only one conclusion:  that the finding of a "firearm" under § 18.2-53.1 necessitated a finding of a "firearm" under § 18.2-308.2.  That impression was reinforced by the circuit court when it removed the firearm-specific instructions for the second phase deliberations and did not replace them with a new definition. (Tr. 202:15–203:3.)  The opening and closing statements during the second phase implied the same.  (*Id*. at 199:1–14, 204:2–10.)  The statements of Jackson's counsel are particularly striking for how quickly counsel conceded the ultimate issue:

> I will keep it brief as well.  I would ask you to consider finding him not guilty *but I realize what you have already done based on the evidence you have seen so far* so I won't repeat the arguments I

32

> have made earlier.  I would ask you to consider finding him not
> guilty on this charge.
>
> .   .   .
>
> I am not going to repeat myself again.  I will just ask you to find
> him not guilty.

(*Id.* at 199:9–14, 204:8–10 (emphasis added).)  A proper instruction defining a § 18.2-308.2

firearm would have corrected the situation.

Because of the probability of a different outcome had a proper instruction been given,

counsel's failure to seek such an instruction prejudiced Jackson.  *See, e.g., Lewis*, 337 P.3d at

1057–58 (finding prejudice when counsel failed to request a jury instruction on the legal

definition of "indecent liberties" because, while some evidence may have supported a conviction

under the proper understanding of that term, other evidence that did not qualify as "indecent

liberties" may have been used by the jury to find guilt).

III.    **Jackson's right to effective assistance of counsel was violated when his trial counsel
        failed to object to the incorrect jury instructions defining "firearm" for the § 18.2-
        53.1 use-of-a-firearm charge**

Jackson's counsel provided ineffective assistance by failing to object to an improper

definition of "firearm" as that term is understood for the § 18.2-53.1 use-of-a-firearm offense.

As a result, the circuit court gave an instruction that conflated the distinct meanings of "firearm"

under §§ 18.2-53.1 and 18.2-308.2.  Jackson's lawyer should have objected to the court's

instruction and proposed an alternative that provided the appropriate definition.  Counsel's

failure to do so prejudiced Jackson.

A.    **Section 18.2-53.1 applies only to firearms capable of firing or objects given
      the appearance of that capability.**

As discussed above, the felon-in-possession statute and use-of-a-firearm statute cover

different types of gun.  *See supra* at 18.  Put simply, the felon-in-possession statute (§ 18.2-

308.2) requires proof of an *actual* firearm, although it need not be operable. *See Armstrong*, 263 Va. at 583, 562 S.E.2d at 145. In contrast, the use-of-a-firearm statute (§ 18.2-53.1) requires proof of either an operable firearm (*i.e.*, possessing the "physical capability of firing a projectile by explosion") or an object given the appearance of being an operable firearm. *See Startin*, 281 Va. at 382, 706 S.E.2d at 878. Although the definitions can overlap—for example, with an actual operable firearm or an actual inoperable firearm given the appearance of operability—a jury should be instructed carefully in trials involving both provisions.

**B. Jackson's trial counsel was deficient in failing to object to jury instructions that allowed conviction under § 18.2-53.1 based on an actual inoperable firearm that was not given the appearance of being capable of firing.**

Here, the jury was not carefully instructed on the meaning of "firearm" under § 18.2-53.1. At the conclusion of the first phase of trial, Jackson's lawyer lodged no objection to the firearm instructions. As a result, the jury was given two instructions that, in combination, allowed them to convict Jackson based on a firearm not covered by the use-of-a-firearm statute.

After instructing the jury on the elements of § 18.2-53.1,[14] the circuit court defined "firearm." Instruction Six read:

> A firearm is an instrument designed, made, and intended to expel a projectile by means of an explosion. It is not necessary that the firearm be operable, capable of being fired, or have the actual capacity to do serious harm.

(Tr. 168:23–169:4.) That instruction was wrong for phase one, because it defines "firearm" under § 18.2-308, *not* § 18.2-53.1 *See Armstrong*, 263 Va. at 583, 562 S.E.2d at 145. The court then further explained with Instruction Seven:

---

[14] The instruction on the underlying § 18.2-53.1 offense covered only "use" of a firearm and omitted the threatening display prong of that statute. As a result, that instruction became law of the case and the jury could convict Jackson only if it found he *used* the firearm as opposed to displaying it in a threatening manner. *See infra* Claim IV.

> Where a victim reasonably perceived a threat or intimidation by a
> firearm, it is not necessary that the object in question was in fact a
> firearm.

(Tr. 169:5–7.)  Instruction Seven was appropriate for § 18.2-53.1, *see Startin*, 281 Va. at 382,

706 S.E.2d at 878, but its combination with Instruction Six—where a victim's perception is

irrelevant—gave an overall misleading charge to the jury.  The jury subsequently found Jackson

guilty of § 18.2-53.1.  (Tr. 193:12–18.)

    Jackson's lawyer performed deficiently in failing to object to the "firearm" instructions.

Due to trial counsel's inaction, the jury was told that they could convict Jackson under § 18.2-

53.1 if they concluded the instrument was (a) designed to operate as a firearm regardless of its

operability *or* (b) any non-firearm object perceived by the store owner to be a firearm.  In other

words, the jury was instructed that operability did not matter for a firearm under § 18.2-53.1.

That was incorrect as a matter of law, because operability—the "physical capability of firing a

projectile by explosion"—is required unless the object is given the appearance of being an

operable gun.  *See Startin*, 281 Va. at 382, 706 S.E.2d at 878.  The inclusion of Instruction Seven

did not cure the error, because it provided only an incomplete definition of a firearm under

§ 18.2-53.1.

    Trial counsel should have objected to Instructions Six and Seven and proposed an

instruction that tracked the teaching of the Supreme Court:

> The term "firearm" means an instrument that has the capacity to
> propel a bullet by the force of gunpowder. This term does not
> include an instrument that is not operable or is not capable of firing
> unless the victim reasonably perceives the object to have that
> capability.

*See Startin*, 281 Va. at 379, 706 S.E.2d at 877; *Holloman*, 221 Va. at 199, 269 S.E.2d at 358.

Counsel's failure to object and offer a correct instruction was deficient.

### C.    Jackson was prejudiced by his trial counsel's deficient performance.

The prejudice analysis for defects in injury instructions follows two steps.  *First*, the court asks whether the incorrect instruction should not have been given or whether a proper instruction should have been given.  *See Hope*, 857 F.3d at 523.  *Second*, if the jury should have been instructed differently, then the court asks whether there was "a reasonable probability that the outcome of the proceedings would have been different."  *Id.*; *see also Strickland*, 466 U.S. at 694.  In assessing the likelihood of that alternative outcome, the court should consider the overall weight of the evidence presented, the other instructions given, and whether the appropriate jury instruction could have altered the jury's consideration of the facts.  *See Hope*, 857 F.3d at 523.  Here, these factors show that  Jackson was prejudiced by hs trial counsel's failure to object to the definition of "firearm" under § 18.2-53.1.

*Proper Instruction*.  The circuit court erred in giving the definition of "firearm" under § 18.2-308.2 instead of under § 18.2-53.1.  *See Payne*, 292 Va. at 869, 794 S.E.2d at 584 ("It is error to give an instruction that incorrectly states the law.").  The only type of "firearm" relevant to the first phase of Jackson's trial was a § 18.2-53.1 instrument.

The proposed instruction above properly states the law under *Startin*.  It would have informed the jury about only the gun relevant for the first phase of the trial.  And it would not have discarded operability, which matters under § 18.2-53.1.

The proposed instruction was also supported by the evidence at trial.  The store owner testified that the robbery happened "so fast" and the instrument appeared to be something "like a gun or a knife."  (Tr. 77:23; 79:17.)  Despite being asked directly, he did not testify that the object had been pointed at him like a firearm.  (*Id*. at 79:18–80:6.)  And no witness testified to the object's firing capability.  Taken in the light most favorable to Jackson, the putative

proponent of the proposed instruction, *see Payne*, 292 Va. at 869, 794 S.E.2d at 584, the evidence supported a correct instruction of "firearm" under § 18.2-53.1, which would have allowed the jury to acquit if they found the instrument was incapable of firing and the store owner did not reasonably perceive a threat or intimidation as such.

Because the given instructions did not actually address the meaning of firearm under § 18.2-53.1, they did not fully and fairly cover the law expressed in the proposed instruction. Instruction Six gave the wrong definition, and Instruction Seven applied only part of the legal meaning of "firearm" in the context of the offense. The proposed instruction would have explained to the jury exactly the type of object that would satisfy the "firearm" requirement of the statute. It would have been error to refuse the proposed instruction. *See Payne*, 292 Va. at 869, 794 S.E.2d at 584 (explaining a trial court errs when it refuses an instruction that (1) "correctly states the law," (2) "is supported by the evidence," and (3) is not "fully and fairly covered" by other granted instructions). Absent counsel's deficient performance, the jury should have been instructed differently.

**Probability of a Different Outcome.** Because Virginia requires jurors to return unanimous verdicts, *see* Va. Const. Art. I, § 8; Va. Code § 8.01-361, "the prejudice prong of *Strickland* is met where there is a reasonable probability that at least one juror would have struck a different balance." *Hope*, 857 F.3d at 524 (quotation marks omitted); *see also Strickland*, 466 U.S. at 694. In light of the proposed instruction defining "firearm" for the use-of-a-firearm charge, that probability is present here.

The storeowner testified that the object may have been a knife. (Tr. 79:13–17.) And although he suggested it might have been a gun, he did not give any testimony that described how that object had been used during the crime. In fact, the owner did not know what the

alleged gunman was doing with the object in his hand.  (*Id.* at 78:7–79:5.)  Johnson's testimony

suggested simply that a gun was present, but did not place the weapon in a particular hand or say

whether the object had been used in a manner suggesting it could be fired.  (*Id.* at 148:3–20.)

And no weapon associated with the crime was ever recovered.

This Court need not speculate whether the jury's deliberations churned over the issue of

the object allegedly used in the robbery, because they sent a question to the judge on that exact

fact:   "*What was [the owner's] answer regarding the alleged object in the Defendant's hand?*"

(Tr. 188:15–16.)  That question reinforces that the evidence did not show beyond a reasonable

doubt that the object was a § 18.2-53.1 firearm.

At least one juror could have reasonably found that the instrument (whatever it was) was

not capable of being fired and not given the appearance of being so capable.  *Contra Redd v.*

*Commonwealth*, 511 S.E.2d 436 (Va. Ct. App. 1999) (evidence sufficient to sustain conviction

for possession of a firearm when object's appearance as a firearm was coupled with the

defendant's threat to use the instrument as a firearm).  Because the proposed instruction would

have correctly informed the jury that such a conclusion precluded a conviction, Jackson was

prejudiced by his counsel's failure to propose it in place of the incorrect and misleading

instructions.  *See Kubat v. Thieret*, 867 F.2d 351, 370 (7th Cir. 1989) (even when jury

instructions were partially correct, prejudice existed because the instructions may have prevented

a single juror from correctly understanding their role).

IV.     **Jackson's right to effective assistance of counsel was violated when his trial counsel
        failed to object to incorrect jury instructions defining "use" for the § 18.2-53.1 use-
        of-a-firearm charge.**

Jackson's counsel provided ineffective assistance by failing to object to the circuit court's

incorrect definition of "use" in the context of the § 18.2-53.1 use-of-a-firearm charge.  Rather

than explain that "use" means "to employ or put into service," the court told the jurors that use

means the same thing as "display." But that conflated two distinct terms in the statute. And

because the jury's original instructions had omitted "display," the law of the case prohibited

them from convicting Jackson for anything other than "use" of a firearm during the robbery.

Jackson's lawyer should have objected to the circuit court's erroneous instruction, and Jackson

was prejudiced by counsel's failure to do so.

### A. "Use" and "display" are not synonymous under § 18.2-53.1.

Virginia Code § 18.2-53.1 prohibits the "use or attempt to use any [firearm] *or* display

such weapon in a threatening manner while committing or attempting to commit" various

offenses, including robbery. (emphasis added); *see Yarborough v. Commonwealth*, 247 Va. 215,

218, 441 S.E.2d 342, 344 (1994) (recognizing that conviction under § 18.2-53.1 requires proof

"that the accused actually had a firearm in his possession and that he used or attempted to use the

firearm or displayed the firearm in a threatening manner while committing or attempting to

commit robbery or one of the other specified felonies"). Because the statute uses the

disjunctive—prohibiting "either the actual use of a firearm, *or* the display of a firearm in a

threatening manner"—the law encompasses two distinct situations. *Rose v. Commonwealth*, 673

S.E.2d 489, 493 (Va. Ct. App. 2009) (citing *Gunn v. Commonwealth*, 272 Va. 580, 586, 637

S.E.2d 324, 327 (2006)). Here, "the distinction between using and displaying the firearm is

critical." *Id.*

Virginia courts have defined "use" in § 18.2-53.1 by its plain and ordinary meaning: "to

employ for some purpose; to put into service." *Id.* at 492 (quoting *Random House Webster's

College Dictionary* 1414 (2d ed. 1997)). Any use "that is intended to cause physical injury"

satisfies that element of the crime. *Id.* at 492. In contrast, "[a] person 'displays' a firearm if he

or she manifests it to any of the victim's senses." *Rowland v. Commonwealth*, 281 Va. 396, 401,

707 S.E.2d 331, 334 (2011). In all events, § 18.2-53.1 does not prohibit the mere possession of a

firearm while committing one of its enumerated offenses. The weapon must be put to service in

the crime or manifested to the victim in a threatening manner. Evidence of "the victim's

perception is relevant only in instances when the object is being displayed, not used." *Rose*, 673

S.E.2d at 494.

    **B.**    **Jackson's trial counsel was deficient in failing to object to the circuit court's explanation that "use" means "display."**

Although § 18.2-53.1 encompasses both "use" and "display" of a firearm, the circuit

court instructed the jury that they could convict Jackson only if they found that he had "*used* a

firearm." (Tr. 168:9–14.) In other words, the jury was not instructed on "display," and so it

could convict Jackson only if it concluded he had "used" a firearm in the commission of the

robbery. Because neither party objected to that narrowed instruction of § 18.2-53.1, it became

the binding law of the case. *See Wintergreen Partners, Inc. v. McGuireWoods, LLP*, 280 Va.

374, 379, 698 S.E.2d 913, 916 (2010); *see, e.g.*, *Banks v. Commonwealth*, 217 Va. 527, 532–33,

230 S.E.2d 256, 260 (1976) (recognizing that the Commonwealth must be held to the

requirements of a jury instruction that has become law of the case, even when the instruction

imposes a higher burden of proof than otherwise required by statute).

When the jury subsequently asked the circuit court to define "use while committing a

robbery," however, the court proposed an explanation that defined "display," not "use." (Tr.

188:22–189:8.) Jackson's counsel did not object to the proposed answer. The court then told the

jury that "use" means the firearm

> had to be *displayed* incident to the crime. In other words, if the
> victim can't *see* it, it wasn't a factor. It would have had to have
> been *displayed* so that under circumstances that it is probable or in

> this case beyond a reasonable doubt that the Defendant saw it, the
> victim *saw it*. That is what use means. It would have had to have
> been *displayed* as part of the crime.  If it was hidden it wasn't part
> of the crime. That is separate because the victim would never know
> it was there.

(*Id.* at 190:6–17 (emphases added).)  Jackson's counsel again raised no objection.  The jury

subsequently returned a guilty verdict for the § 18.2-53.1 use-of-a-firearm charge.

Trial counsel was deficient for failing to object to the circuit court's explanation that

"use" means "display" under § 18.2-53.1.  Well-established case law makes clear that the terms

are not synonymous.  *See Rose*, 673 S.E.2d at 493.  The court's answer to the jury did not

approach the meaning of "use" and instead focused on the victim's perception of the weapon.

But "the victim's perception is relevant only in instances where the object is being displayed, not

used."  *Id.* at 494; *see Rowland*, 707 S.E.2d at 334 ("A person 'displays' a firearm if he or she

manifests it to any of the victim's senses.").  Trial counsel should have proposed a response that

tracked with Virginia case law, explaining that "use" of a firearm goes to whether it was

employed or put to into service during the crime.

Trial counsel was additionally deficient because, even if the "display" element remained

in the case despite its absence from the original § 18.2-53.1 jury instruction, that crime does not

prohibit the mere "display" of a firearm.  *See Dezfuli v. Commonwealth*, 707 S.E.2d 1, 5 (Va. Ct.

App. 2011).  Rather, the defendant must "display his firearm 'to promise punishment, reprisal or

other distress' to the victim."  *Id.*; *see also* Claim VI.A.  Yet the circuit court told the jury that

the simple display of a firearm—that "the victim saw it"—would violate § 18.2-53.1.  Trial

counsel should have objected to that explanation.  These critical failures were markers of

deficient performance by Jackson's trial counsel, not strategic decisions.

### C.  Jackson was prejudiced by his trial counsel's deficient performance.

The prejudice analysis for defects in injury instructions follows two steps.  *First*, the

court asks whether the incorrect instruction should not have been given or whether a proper

instruction should have been given.  *See Hope*, 857 F.3d at 523.  *Second*, if the jury should have

been instructed differently, then the court asks whether there was "a reasonable probability that

the outcome of the proceedings would have been different."  *Id.*; *see also Strickland*, 466 U.S. at

694.  In assessing the likelihood of that alternative outcome, the court should consider the overall

weight of the evidence presented, the other instructions given, and whether the appropriate jury

instruction could have altered the jury's consideration of the facts.  *See Hope*, 857 F.3d at 523.

Here, these factors show that Jackson was prejudiced by his lawyer's failure to object to the

improper explanation of "use" and to propose a proper alternative explanation.

*Proper Instruction*.  The circuit court erred in giving an incorrect explanation of "use."

*See Payne*, 292 Va. at 869, 794 S.E.2d at 584 ("It is error to give an instruction that incorrectly

states the law.").  Simply displaying a firearm is not the same as using it during the commission

of a robbery.  The jury should not have been told otherwise.  Similarly, even if display were still

in the case when the jury asked for clarification, the court's explanation elided that the statute

prohibits the *threatening* display of a firearm, not just its visibility during the crime.

Jackson's counsel should have offered an explanation that accurately explained "use"

under § 18.2-53.1 and distinguished that conduct from "display."  Here, a proposed instruction

distinguishing "use" from "display" would have met all three of those requirements.  The

distinction is borne out by the law.  *See Rowland*, 281 Va. at 401–02, 707 S.E.2d at 334; *Rose*,

673 S.E.2d at 493.  The evidence adduced at trial showed only that the victim saw "something

like a gun or a knife" in one of the robbers' hands, but the victim did not know what that robber

42

was doing with the object. (Tr. 79:9–20.) There was no testimony about the object—knife or gun—being pointed, brandished, or otherwise put to service during the robbery. And none of the other instructions covered the relevant principle of law—indeed, that is likely why the jury asked the circuit court to define "use while committing a robbery." *See also Rose*, 673 S.E.2d at 494 ("[I]t is clear that the victim's perception is relevant only in instances when the object is being displayed, not used."). For the same reasons, it was additionally deficient for Jackson's trial counsel to fail to object or otherwise correct the circuit court's explanation that mere display— without evidence of showing a threat—is sufficient to convict under § 18.2-53.1. In all events, it would have been error for the court to refuse to offer a different explanation. *See Payne*, 292 Va. at 869, 794 S.E.2d at 584 (explaining a court errs in denying an instruction that (1) "correctly states the law," (2) "is supported by the evidence," and (3) is not "fully and fairly covered" by other granted instructions).

***Probability of a Different Outcome.*** Because Virginia requires jurors to return unanimous verdicts, *see* Va. Const. Art. I, § 8; Va. Code § 8.01-361, "the prejudice prong of *Strickland* is met where there is a reasonable probability that at least one juror would have struck a different balance." *Hope*, 857 F.3d at 524 (quotation marks omitted). Separately or together, the failure of Jackson's trial counsel to object to the court's explanation of "use" and to offer a proper definition distinguishing "use" from "display" make it reasonably probable that at least one juror would have struck a different balance and changed the result of the proceedings.

The evidence showing "use" of the purported gun (as opposed to mere display) was not so overwhelming that the court can conclude Jackson was not prejudiced. Indeed, there was no evidence that the firearm was employed by its holder. Nor was there evidence that it was displayed in a threatening manner.

43

More important, under these circumstances, the prejudice to Jackson was heightened because the jury *specifically asked* what "use" meant in the context of the § 18.2-53.1 charge *and* about what Johnson had said about the alleged "use" here. The circuit court's erroneous instruction thus was at the forefront of the jury's determination of guilt for that charge. Jackson was prejudiced by his counsel's failure to object to the incorrect explanation of "use" and the parallel failure to offer a correct instruction. *See Tart v. Commonwealth*, 663 S.E.2d 113, 116 (Va. Ct. App. 2008) ("[A]n instruction's proper delineation of the elements of the offense is vital to a criminal defendant and is one of the essentials of a fair trial." (internal quotation marks omitted)).

**V.  Jackson's right to effective assistance of counsel was violated when his trial counsel failed to move to strike the § 18.2-53.1 use-of-a-firearm charge for insufficient proof that Jackson used or threateningly displayed a firearm.**

At the conclusion of the first phase of the trial, Jackson's trial counsel rendered ineffective assistance by failing to move to strike the § 18.2-53.1 use-of-a-firearm charge based on the Commonwealth's failure to present sufficient evidence that Jackson "used" a firearm or "displayed" one "in a threatening manner." At most, the evidence suggested an object appearing to be a gun was present at the robbery, but no witness testified that the object had been used or displayed in any particular manner. Counsel should have moved to strike the charge, and Jackson was prejudiced by that failure.

**A.  Section 18.2-53.1 prohibits the use or threatening display of a firearm during the commission of a robbery.**

As discussed above, § 18.2-53.1 prohibits the "use" of a firearm "or display [of] such weapon in a threatening manner while committing" certain crimes including robbery. *See supra* IV, Part A. Because the statute uses the disjunctive, the law encompasses two distinct situations. *See Rose*, 673 S.E.2d at 493. In short, a defendant "uses" a firearm when he employs it or puts

into service during the crime. *See id.* at 492. By contrast, "display" occurs when a defendant "manifests [the firearm] to any of the victim's senses." *Rowland*, 281 Va. at 401, 707 S.E.2d at 334.

Importantly, the statute does not apply to the mere display of a firearm: it covers the *threatening* display. To obtain a conviction under § 18.2-53.1, therefore, prosecutors must show that the defendant "display[ed] his firearm 'to promise punishment, reprisal or other distress' to the victim." *Dezfuli v. Commonwealth*, 10, 707 S.E.2d 1, 5 (Va. Ct. App. 2011). Virginia case law shows that convictions under the "display" prong of § 18.2-53.1 are attended by such threats. *See, e.g.*, *Courtney v. Commonwealth*, 281 Va. 363, 706 S.E.2d 344 (2011) (affirming conviction when defendant told the victim "I have a gun" and threatened to kill her); *Powell v. Commonwealth*, 268 Va. 233, 602 S.E.2d 119 (2004) (affirming conviction when defendant told victims he had a gun in his pocket, kept his hand in his pocket, and threatened to hurt them if they did not cooperate); *Cromite v. Commonwealth*, 348 S.E.2d 38 (Va. Ct. App. 1986) (affirming conviction when defendant kept hand in coat pocket, stuck a hard object in the victim's stomach, and ordered the victim to open the cash register and lie down on the floor). Absent evidence of any threat, the mere presence of a gun during the crime does not, in and of itself, prove a violation of § 18.2-53.1.

**B.     Jackson's trial counsel was deficient in failing to move to strike the § 18.2-53.1 charge because no proof suggested the alleged firearm was used or displayed in a threatening manner.**

At the end of the Commonwealth's case in the first phase of the trial, Jackson's counsel moved to strike the use-of-a-firearm charge. Counsel's argument focused on whether the object in question was a firearm and whether the evidence showed "proof of the underlying felony."

(Tr. 159:16–160:9.)  The court denied the motion.  (*Id.* at 160:10.)  Counsel renewed the motion "for the same reasons stated," but the court again denied the motion.  (*Id.* at 163:20–164:1.)

Counsel did not move to strike based on insufficient proof that Jackson had used or threateningly displayed a firearm.  Counsel should have done so.  The motion would have been based on precedent and "would have carried some substance."  *Tice*, 647 F.3d at 104.  The failure to so move constituted deficient performance.

### C.    Jackson was prejudiced by his trial counsel's deficient performance.

The failure of Jackson's trial counsel to move to strike the § 18.2-53.1 charge "undermine[s] confidence in the outcome" of Jackson's trial.  *See Strickland*, 466 U.S. at 694. Had trial counsel so moved, there is a reasonable probability that the circuit court would have granted the motion and Jackson would not have been convicted of that offense.  *See Grueninger*, 813 F.3d at 530 & n.9 (discussing *Strickland* prejudice prong in context of failure to file motions).  Specifically, had counsel moved to strike the evidence as to the § 18.2-53.1 charge based on insufficient proof of use or threatening display, the circuit court would have confronted a dearth of evidence regarding how that object was employed or displayed during the robbery.

There was evidence that an instrument of some sort was present at the robbery. Johnson's testimony suggested Jackson had that instrument on his person at the time of the robbery.  But there was no evidence that Jackson put the instrument to use during the robbery or made any threats while manifesting the object to the store owner's senses.  No witness testified that the object had been employed "to inflict physical harm in order to accomplish the robbery." *Rose*, 673 S.E.2d at 493; *see, e.g. Rowland*, 281 Va. at 401, 707 S.E.2d at 334 (rejecting Commonwealth's argument "that the circumstantial evidence is sufficient to support the finding that [the defendant] used the firearm in the commission of the burglary because he had the

46

firearm in his hand when he entered the restaurant"). And, although the owner testified that one of the robbers had a gun, he did not testify that the object had been pointed at him or that he had been threatened by the gunman during the robbery. *See Dezfuli*, 707 S.E.2d at 5 (explaining a defendant violates § 18.2-53.1 when he "display[s] his firearm 'to promise punishment, reprisal or other distress' to the victim").

Under these circumstances, there is a reasonable probability that the circuit court would have granted the motion to strike the § 18.2-53.1 charge had Jackson's counsel made the request based on insufficient proof of use or threatening display. And because such a motion would have come after the close of the Commonwealth's case—thus assuring an acquittal as to that charge—counsel's failure to do so fundamentally undermines the confidence in the outcome of Jackson's trial. Jackson was thus prejudiced by his counsel's deficient performance. *See Strickland*, 466 U.S. at 694.

## VI. Jackson's right to effective assistance of counsel was violated when his trial counsel failed to request a jury instruction on accomplice testimony.

Jackson's trial counsel provided ineffective assistance by failing to seek a jury instruction warning of the unique concerns associated with uncorroborated accomplice testimony. Such an instruction is required in cases like this one, where the only evidence offered to prove Jackson committed the crimes came from three accomplices: Cierra Owens, Nicole Thompson, and Javon Johnson. The failure to seek an accomplice testimony instruction was deficient performance, and Jackson was prejudiced by that failure.

### A. In Virginia, uncorroborated accomplice testimony requires an accompanying jury instruction.

As a general rule, a jury should be given an instruction when prosecutors seek a conviction based on uncorroborated accomplice testimony. *See United States v. McCabe*, 720

F.2d 951, 955 (7th Cir. 1983). Indeed, in Virginia such an instruction is *required*. *See Dillard v. Commonwealth*, 216 Va. 820, 821, 224 S.E.2d 137, 139 (1976) (holding that a trial court must "warn the jury against the danger of convicting upon such uncorroborated testimony"); *see also Via v. Commonwealth*, 288 Va. 114, 115, 762 S.E.2d 88, 89 (2014) (explaining such an instruction "should be given if a witness whose testimony is at issue is an accomplice and if his or her testimony is uncorroborated"). The rule springs from the concern that an accomplice will try "to exculpate himself from criminal liability by laying the blame on another." *Brown v. Commonwealth*, 382 S.E.2d 296, 299 (Va. Ct. App. 1989). Concerns about accomplice testimony should not be confused with more general concerns about witness bias. *See id.* (pointing out the difference between an accomplice testifying at trial and "an independent witness who may be impeached for bias").

Whether a witness qualifies as an accomplice depends on "'whether he could be indicted for the same offense.'" *Via*, 288 Va. at 115, 762 S.E.2d at 89 (quoting *Guthrie v. Commonwealth*, 171 Va. 461, 469, 198 S.E. 481, 484 (1938)). That standard requires only probable cause—far less proof than required for a conviction. *See Britt v. Commonwealth*, 202 Va. 906, 907, 1221 S.E.2d 495, 496 (1961) (recognizing an indictment need be supported only by probable cause); *see also* Va. Code § 19.2-191 (same). Neither the fact that an alleged accomplice was not charged with the crime at issue nor the government's claim that the alleged accomplice lacked criminal intent are relevant to determining whether the person could have been indicted. *See Via*, 288 Va. at 115–16, 762 S.E.2d at 89.

Proper instructions about accomplice testimony are common and widely available. Indeed, the Virginia Practice Series offers *three* model instructions for warning jurors about the dangers of unsupported accomplice testimony:

> Under the testimony given by [*name of accomplice*] in this case, [*he/she*] was an accomplice in the commission of the offense charged in the indictment, and while you may found your verdict upon the uncorroborated testimony of an accomplice, it is your duty to receive such testimony with great care and caution, and the court warns you of the danger of convicting the defendant upon the uncorroborated testimony of an accomplice.

Va. Prac. J.I. § 59:2.

> [*Name of accomplice*] has testified that [*he/she*] was an accomplice in the commission of the crimes charged in the indictments. While you may find your verdict upon [*his/her*] uncorroborated testimony, you should consider [*his/her*] testimony with great care and you are cautioned as to the danger of convicting the defendant upon the uncorroborated testimony of an accomplice.

*Id.* § 59:3 (citing *Via*, 288 Va. at 115, 762 S.E.2d at 89).

> The court instructs the jury that, while you may find a verdict upon the unsupported testimony of an accomplice, such evidence is to be received with great caution. The court further instructs the jury that the testimony of an accomplice must be received with great care and caution, and if you believe the testimony of an alleged accomplice was false, and that [*he/she*] was induced to testify falsely either by fear of punishment or hope of reward, you must disregard that testimony in its entirety.

*Id.* § 59:4 (relying on *Blount v. Commonwealth*, 213 Va. 807, 195 S.E.2d 693 (1973)).

**B.** **Jackson's trial counsel was deficient by failing to seek a jury instruction regarding accomplice testimony.**

During the first phase of trial, the jury considered Jackson's guilt as to the conspiracy to commit robbery, robbery, and the use of a firearm during the robbery. The only evidence offered at trial to sustain those convictions came from Ciera Owens, Nicole Thompson, and Javon Johnson.

Owens testified that she hosted a gathering at her home at which the plan to commit the crime was hatched. She admitted that she asked Jackson if she could go with them, but he said no. She also testified that when the three robbers returned to the house, she kept some of the

stolen money and merchandise. (*See* Tr. 115:10–17, 116:1–16, 118:8–18, 121:2–4.) In addition, discovery materials from the Commonwealth showed that Owens's house "had a bunch of stolen guns in the attic." (Ex 3 at 26-27.) Other potential witnesses told investigators that Owens participated in the planning stages of the robbery, departed the house with the three men, and "may have been a 'look out' at the very least." *Id.* at 41–43.

Thompson echoed much of Owens's testimony. She stated that the three men left Owens's house "to go get some money." She admitted that she kept some of the stolen cigarettes upon their return. (Tr. 138:22, 134:22–23.) Thompson also told investigators that she knew when the men left "some type of criminal activity was involved," and she suspected a robbery. (Ex. 3 at 51.)

Johnson testified that he and Jackson agreed at Owens's home to go commit the robbery, and that they followed through on the plan. He described the robbery and admitted his involvement. Finally, he testified that the men returned to Owens's home and that he kept some of the money and stolen cigarettes. (Tr. 146:6–149:10.)

There can be little doubt that Javon Johnson was an accomplice in the robbery. He testified that he and Jackson came up with the idea of robbing someone, left Owens's house together to commit the crime, and then did so with a third person. Indeed, in exchange for his testimony, the Commonwealth allowed Johnson to plead to the lesser offense of grand larceny rather than robbery.

Cierra Owens and Nicole Thompson were also accomplices for purposes of the accomplice jury instruction. Both women had advanced knowledge of the crimes and aided and abetted in their commission by "encouraging, inciting, or in some manner offering aid" to the robbers. *See Muhammad v. Commonwealth*, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005)

(internal quotation marks omitted)).  In particular, both admitted at trial or to investigators that

they knew the men were leaving to go commit a robbery and then assisted them in disposing of

the loot when they returned.  And in Owens's case, she wanted to go with them—and potentially

even acted as a lookout during the crime.  Moreover, both women admitted to knowingly

receiving stolen goods in connection with the robbery, which could have led to their indictment

for larceny.  *See* Va. Code § 18.2-108(A).  Both petit larceny and receipt of stolen property are

lesser-included offenses to the crime of robbery.  *See Defresne v. Commonwealth*, 2018 WL

1096067, at *1 (Va. Mar. 1, 2018); *Martin v. Commonwealth*, 221 Va. 720, 722–23, 273 S.E.2d

778, 780 (1981); *Walker v. Commonwealth*, 2000 WL 311167, at *2 (Va. Ct. App. Mar. 28,

2000).

     Other than the testimony of these three individuals, no other evidence linked Jackson to

the crimes in question.  The store owner did not identify Jackson.  No physical evidence linked

Jackson to the crime.  No video recording was produced.  Fingerprints were collected and

processed, but none matched Jackson.  Importantly, for purposes of the accomplice testimony

instruction, accomplices cannot provide the required corroboration for each other's testimony.

*See Via*, 288 Va. at 115, 762 S.E.2d at 89 ("Whether accomplice testimony is corroborated is

subject to the long established principle that accomplice testimony cannot be corroborated by the

testimony of another accomplice.").

     Under these circumstances, it would have been error for the circuit court to refuse a

requested instruction on accomplice testimony.  *See Smith v. Commonwealth*, 218 Va. 455, 456–

57, 237 S.E.2d 776, 777 (1977) (finding reversible error when trial court refused cautionary

instruction on accomplice testimony that "directly implicated the defendant in the robbery," the

victim "was unable to identify the defendant as one of his assailants," and "no other evidence

tended to connect the defendant with the crime"). Trial counsel's failure to seek such an instruction constituted deficient performance.

### C. Jackson was prejudiced by his trial counsel's deficient performance.

The prejudice analysis for defects in injury instructions follows two steps. *First*, the court asks whether the incorrect instruction should not have been given or whether a proper instruction should have been given. *See Hope*, 857 F.3d at 523. *Second*, if the jury should have been instructed differently, then the court asks whether there was "a reasonable probability that the outcome of the proceedings would have been different." *Id.*; *see also Strickland*, 466 U.S. at 694. In assessing the likelihood of that alternative outcome, the court should consider the overall weight of the evidence presented, the other instructions given, and whether the appropriate jury instruction could have altered the jury's consideration of the facts. *See Hope*, 857 F.3d at 523. Here, these factors show that Jackson was prejudiced by his trial counsel's failure to request a jury instruction regarding accomplice testimony.

*Proper Instruction*. Because the only evidence linking Jackson to these crimes came from three accomplices whose testimony was uncorroborated, the circuit court would have been required to give an accomplice testimony instruction had trial counsel asked for it. *See Dillard*, 216 Va. at 821, 224 S.E.2d at 139.

*Probability of a Different Outcome*. Because Virginia requires jurors to return unanimous verdicts, *see* Va. Const. Art. I, § 8; Va. Code § 8.01-361, "the prejudice prong of *Strickland* is met where there is a reasonable probability that at least one juror would have struck a different balance." *Hope*, 857 F.3d at 524 (quotation marks omitted); *see also Strickland*, 466 U.S. at 694. In light of the proposed instruction regarding accomplice testimony, that probability is present here.

52

Given the dearth of corroborating evidence placing Jackson at the crime, there is a reasonable probability that "at least one juror would have struck a different balance" had they been warned about the concerns associated with relying on accomplice testimony. *Hope*, 857 F.3d at 524 (quotation marks omitted). Numerous courts have found prejudice in cases like this, when accomplice testimony provided the lynchpin of the prosecution's case but the jury received no instruction about the special concerns associated with that testimony.[15]

Importantly, raising credibility concerns during closing argument did not ameliorate the prejudice of the missing accomplice testimony instruction. The Fourth Circuit recently considered whether attorney argument can do the job of a jury instruction. *See Lee v. Clarke*, 781 F.3d 114 (4th Cir. 2015). Unsurprisingly, it can't: "[a] court issued jury instruction carries the command and force of law in a way that a statement by counsel cannot, and thus prejudice that arises from a flawed or omitted jury instruction is not cured by mere argument." *Id.* at 125-26. The court's conclusion in that case applies with equal force here:

> In sum, the trial court should have given the [accomplice testimony] instruction if asked. Trial counsel's inadequate discussion of [accomplice credibility] during closing argument did not cure the lack of instruction. Under the law of Virginia, the undisputed facts here present a reasonable probability that the outcome of [Jackson's] trial would have been different if the

---

[15] *See, e.g.*, *United States v. Johnson*, 600 F. App'x 872, 877 (4th Cir. 2015) (finding that "the jury instructions contained prejudicial errors warranting reversal," including the failure to include "an instruction regarding the testimony of alleged accomplices"); *Via*, 762 S.E.2d at 89 ("Because [the witness] was an accomplice and his testimony was not corroborated, the trial court abused its discretion in refusing [the accomplice jury instruction]."); *Smith v. Commonwealth*, 237 S.E.2d 776, 777 (Va. 1977) (it was error for court to refuse to give a cautionary instruction regarding an accomplice whose testimony "directly implicated the defendant in the robbery . . . and no other evidence tended to connect the defendant with the crime"); *see also Freeman v. Class*, 95 F.3d 639, 642 (8th Cir. 1996) ("Failure to make the requests was highly prejudicial to [the defendant] to the extent that the fundamental fairness of the proceeding and the conviction was undermined. Had the jury been properly instructed, it may well have discredited [the accomplice's] testimony, which was the only direct evidence that linked Freeman to the theft of the car.").

> [accomplice testimony] instruction had been given, and …
> therefore … [Jackson] was prejudiced by his trial counsel's failure
> to request the [accomplice testimony] instruction.

*Id*. at 129.

Here, as in *Johnson*, *Via*, *Smith*, and others, the government's case "hinged" on accomplice testimony, and therefore "[t]he weight given to [this] testimony was crucial to the outcome of the case." *Freeman*, 95 F.3d at 642. Had the jury been properly instructed as to the proper lens through which to view the testimony of Johnson, Owens, and Thompson, the jury "may well have discredited [their] testimony." *Id.* Without that testimony, the jury would have been left with no evidence placing Jackson at the robbery. Jackson was thus prejudiced by his counsel's failure to request an instruction regarding accomplice testimony.

## VII.  The cumulative effect of trial counsel's errors prejudiced Jackson.

To the extent the Court finds the above-enumerated errors individually harmless, their cumulative effect creates a reasonable probability that Jackson was prejudiced at trial. Under the cumulative effect doctrine, "the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Woods*, 710 F.3d 195, 208 (4th Cir. 2013). The corresponding inquiry asks "whether the cumulative effect of the errors alleged in [the petitioner's] individual claims rises to a level of prejudice creating a reasonable probability that they affected the outcome of the proceeding." *Martin v. Clarke*, No. 7:11-cv-231., 2012 WL 967087, at *10 (W.D. Va. Mar. 21, 2012).

This Court has applied the doctrine to find that multiple errors committed by ineffective counsel can cause cumulative prejudice. In *Lankford v. Foster*, this Court concluded that defense counsel erred in (1) failing to insist that the jury find that two of the elements had been met; and (2) failing to insist that the jury be called upon to deal with the vagueness of testimony

regarding a "somewhat nebulous" legal concepts at issue. 546 F. Supp. 241, 253 (W.D. Va. 1982). Finding that "[r]equests for such instructions could have been made without in any way compromising defendant's theory of defense," the court held that "[t]he seriousness of such omissions is manifest and the appropriate response by this court is clear." *Id.* The cumulative effect of those errors "indicate[d] a lack of adequate representation," thus "prejudicing the petitioner and denying him a fair trial." *Id.*

More recently, the Fourth Circuit held that a combination of "numerous defects in the jury instructions" very similar to those at issue here provided grounds for reversing a conviction. *See United States v. Johnson*, 600 F. App'x 872, 877 (4th Cir. 2015). In *Johnson*, the court held that the district court had conflated statutory language regarding the use and possession of a firearm and also had failed to include several standard jury instructions, including the dangers associated with testimony from alleged accomplices. *See id.* Rather than assigning individualized weight to each such error, the Fourth Circuit summarily held that "the jury instructions contained prejudicial errors warranting reversal." *Id.*

Here, like in *Lankford* and *Johnson*, the erroneous jury instructions and concerns with proof central to Jackson's conviction, along with the biased testimony on which it was based, prejudiced Jackson. Collectively, these errors show a reasonable probability that the outcome at trial would have been different had Jackson received the effective assistance of counsel guaranteed by the Sixth Amendment.

## PRAYER FOR RELIEF

Pursuant to the foregoing, Jackson respectfully requests that this Court:

1.      Expand the record and provide Jackson reasonable litigation expenses and leave to engage in discovery so that he may have the opportunity to identify, develop, and adequately present the allegations in this Petition;

2.      Allow Jackson to amend this Petition after the provision and use of reasonable litigation expenses and sufficient time to collect, review, and analyze records and evidence.

3.      Conduct a hearing at which Jackson may offer proof in support of this Petition as well as argument of counsel;

4.      Grant this Petition for Writ of Habeas Corpus and set aside Jackson's convictions and sentences;

5.      Order Jackson's immediate release from State custody; and

6.      Grant such other relief as may be necessary and appropriate.


    /s/ Kevin S. Elliker

Kevin S. Elliker (VSB No. 87498)        Carter C. Simpson (VSB No. 81988)
Ann E. Hancock (VSB No. 91010)          (*pro hac vice* motion forthcoming)
HUNTON ANDREWS KURTH LLP                HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower            2200 Pennsylvania Ave. NW
951 East Byrd Street                    Washington, DC  20037
Richmond, Virginia  23219               Telephone:  (202) 955-1500
Telephone:  (804) 788-8656              csimpson@HuntonAK.com
kelliker@HuntonAK.com
hancocka@Hunton.AK.com

*Counsel for Petitioner*