# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

**DARRYL SYLVESTER JACKSON,**

    **Petitioner,**

v.

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

    **Respondent.**

Case No.: 7:19-cv-00006

## PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

During the one-day, two-phase, four-charge jury trial, Darryl Jackson's trial counsel made several critical and unreasonable errors that prejudiced Jackson. As explained at length in Jackson's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), those errors violated Jackson's right to effective assistance of counsel under the Sixth Amendment of the United States Constitution, so Jackson's convictions and sentence should be set aside. In response, Respondent Harold W. Clarke (the Director) denies that Jackson received ineffective assistance and asks the Court to dismiss the Petition. The Court should deny that request.

### Argument

The parties agree that Claim I is exhausted and that the Court should review Claims II through VII through the lens of *Martinez v. Ryan*, 566 U.S. 1 (2012). And within that framework, the parties agree that the Court should focus on whether Jackson's claims are "substantial," meaning they have "some merit." *Id.* at 14. For the reasons given in the Petition, and as explained below, all of Jackson's claims are meritorious, none are procedurally barred, and each requires the Court to set aside his conviction and sentence.

**Claim I: Insufficient Proof of a § 18.2-308.2 "Firearm"**

Under Claim I, Jackson raises his trial counsel's failure to move to strike the § 18.2-308.2 felon-in-possession-of-a-firearm charge based on insufficient proof that the object in the alleged gunman's hand was an actual firearm. *See* Pet. 20. The only evidence presented at trial about the object was vague statements describing the object as "something like a gun or a knife." (Tr. 79:14.) But those statements on their own cannot sustain a conviction under § 18.2-308.2. Jackson's counsel should have moved to strike the charge on that basis.

The Director does not dispute Jackson's explanation of the felon-in-possession statute. Section 18.2-308.2 prohibits felons from possessing *actual* firearms. *See* Pet. 18–20. It does not cover objects merely appearing to be guns (much less knives). *See Startin v. Commonwealth*, 281 Va. 374, 382, 706 S.E.2d 873, 878 (2011) (recognizing replica guns and BB guns do not qualify as "firearms" under § 18.2-308.2). If prosecutors fail to introduce the actual gun at trial, they must prove its operability as a firearm through other evidence, like verbal threats accompanying the display of the object, physical gestures with the object, or testimony identifying the object as a particular type of gun. *See Jordan v. Commonwealth*, 285 Va. 153, 158, 747 S.E.2d 799, 801 (2013); *Redd v. Commonwealth*, 511 S.E.2d 436, 438 (Va. Ct. App. 1999).

At Jackson's trial, prosecutors introduced none of that proof. Instead, they relied on ordinary descriptions of the object as a gun (or knife). *See* Pet. 22–27. That kind of proof "is *insufficient*, alone, to prove that the object" meets the actual-operability criteria required by the law. *See Redd*, 511 S.E.2d at 438 (emphasis added). Jackson's counsel should have moved to strike the felon-in-possession charge based on that failure of proof, and he was constitutionally deficient for failing to do so. *See* Pet. 22–23.

The Director seeks refuge in the Virginia Supreme Court's rejection of this claim, but that Court's conclusion was based on a clearly erroneous recitation of a fact not presented at trial: "that Jackson pointed a firearm at the store owner and demanded money." *Jackson v. Clarke*, No. 170843, 2018 WL 2440266, at *3 (Va. May 31, 2018) (per curiam). One will search the trial record in vain for evidence that supports that conclusion—a point highlighted by the three dissenting Justices. *Id.* at *4 ("[N]either the store owner nor Johnson testified that the man pointed the object at the store owner or made any gestures or threats with the object."). The Director does not even try to shore up that imagined proof. In fact, he avoids it all together— nowhere in the Director's brief does he contend Jackson "pointed" the gun at the store owner. And for good reason: no one testified to that fact at trial, not even the store owner himself. *See* Pet. 25–26 ("The prosecutor asked the owner, 'What was he doing with his hand?' (Tr. at 79:18.) The owner responded, 'I don't know.' (*Id.* at 79:19.) The prosecutor asked even more directly: 'Was he pointing something at you in his hand?' (*Id.* at 79:23.) But the store owner did not answer the question. (*See id.* at 80:1–6.)).[1]

Instead, the Director insists "the owner felt threatened to comply and testified that he did not call the police because of the gun." Resp't Br. 29. He claims that those facts make this case like *Redd* and *Jordan*, when the defendant's conduct created a jury question about whether the

---

[1] In his motion to dismiss, the Director does not argue for deference to the decision of the Supreme Court of Virginia based on the testimony of Jackson's alleged cohorts. Rightfully so. As explained in the Petition, alleged eyewitness testimony that describes an object as a gun cannot prove that the object was an operable firearm as required by § 18.2-308.2. *See* Pet. 26. What's more, the Supreme Court erred in determining each person had seen the weapon "up close" and made "unambiguous" descriptions. *See id.* This Court need look no further than the store owner's equivocal testimony that the object might have been a knife to see the error of the Supreme Court's factual determinations.

3

defendant impliedly asserted to object was an operable firearm. *See id.* 29–30. But those cases go far beyond the alleged conduct here. In *Redd*, the defendant brandished the weapon and made a verbal threat to kill the victim. *See* 511 S.E.2d at 438. In *Jordan*, the defendant pointed the weapon at a witness, who identified it as a specific type of gun. *See* 286 Va. at 158, 747 S.E.2d at 801. Here, at most, the prosecutors put on evidence that someone visibly possessed an object *appearing* to be a gun, but they provided no accompanying testimony suggesting what the alleged gunman said about or did with the object. Even in retreat from the Supreme Court's erroneous factual finding, the Director cannot prop up the actual testimony to show an implied assertion of operability.[2] Because the Supreme Court's rejection of Claim I hinged on an unreasonable determination of fact, this Court owes that decision no deference.

On the merits of the claim, Jackson's trial counsel rendered ineffective assistance by failing to move to strike the felon-in-possession charge under § 18.2-308.2 based on insufficient proof of an actual firearm. *See* Pet. 22–25. Had counsel so moved, there is a reasonable probability that the trial court would have granted the motion, and Jackson would not have been convicted of that offense. *See Grueninger v. Director, Va. Dep't of Corrs.*, 813 F.3d 517, 530 & n.9 (4th Cir. 2016). That failure "undermine[s] confidence in the outcome" of Jackson's trial and warrants relief under § 2254. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

---

[2] To be sure, federal law applies a presumption of correctness to a State court's factual determinations, which falls away only with a showing of clear and convincing evidence. 28 U.S.C. § 2254(e)(1). But the trial record lays bare the incorrectness of the Virginia Supreme Court's decision. *See* Pet. 23–27; *see, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 528–29 (2003) (finding the presumption of correctness overcome when the State court based its conclusion on facts not in the record before it). By relation, a factual error satisfies the unreasonable-determination standard in § 2254(d)(2) when the determination is "one sufficiently against the weight of evidence." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010). Again, the trial record shows that Jackson satisfies that standard.

4

**Claim II: Incorrect Instruction Defining a § 18.2-308.2 "Firearm"**

Under Claim II, Jackson raises his trial counsel's failure to offer an instruction defining the term "firearm" under the § 18.2-308.2 felon-in-possession-of-a-firearm charge. *See* Pet. 28. As explained above, § 18.2-308.2 requires an *actual* firearm. If prosecutors fail to introduce the gun at trial, then the alleged firearm's operability is critical to sustaining a conviction. *See Startin*, 281 Va. at 379, 706 S.E.2d at 877. That element requires a coherent and accurate jury instruction. But during the second phase of the bifurcated trial, the trial court did not give the jury *any* instruction defining "firearm." Jackson's counsel should have objected and insisted on an accurate definition. Because at least one juror likely would have reached a different determination of guilt on the § 18.2-308.2 charge with a proper definition of "firearm," Jackson was prejudiced by his trial counsel's deficient performance.

On this claim, the Director first insists the trial court *did* properly instruct the jury on the meaning of "firearm." He points to the definition of a § 18.2-308.2 firearm given during the first phase of trial and notes the trial court sent all the instructions from the first phase back with the jury during their deliberations in the second phase. "Any reference to specific instructions" during the phase-two instructions, the Director claims, "was merely for emphasis." Resp't Br. 10.

The Director's opening position does not square with the trial record. Although the trial court sent all instructions back with the jury during the phase-two deliberations, the court *limited* the jury's consideration to the instructions he said applied to that part of the proceeding. He told them Instructions "One, Two, and Eight through Twelve, plus this Thirteen *apply to this trial*." (Tr. 203:1–3 (emphasis added).) There is no way to read that express limitation as "merely for emphasis" (whatever that means) or as somehow implying that the un-emphasized instructions still applied. Because the trial court told the jury the firearm-specific instructions (Six and

5

Seven) did not apply during the second phase, the jurors were on their own to figure out what "firearm" meant for the felon-in-possession charge. Jackson's counsel should have objected to that critical and prejudicial error. *See Gerald v. Commonwealth*, 805 S.E.2d 407, 411 (Va. Ct. App. 2017) (noting the "narrow definition" of "firearm" under § 18.2-308.2).

Moreover, even if the jury considered itself instructed on all thirteen instructions for the second phase of trial, the two firearm charges from the first phase did not properly define the term for the § 18.2-308.2 charge. Instruction Six defined "firearm" term under that statute, but Instruction Seven materially undermined that narrow definition by allowing the jury to find a "firearm" even if the object was *not* a firearm, so long as "the victim reasonably perceives a threat or intimidation." (Tr. 169:5–8.) To the contrary, whether an object "was, in fact, a firearm" matters for § 18.2-308.2. *See* Pet. 18–25, 28–33. Prosecutors may secure convictions under either § 18.2-308.2 or § 18.2-53.1 based on circumstantial evidence that a felon used or threateningly displayed an object during a robbery in a way suggesting it was an actual firearm. *See Startin*, 281 Va. at 379, 706 S.E.2d at 877; *Redd*, 511 S.E.2d at 438. But if the jury does not believe the object was an *actual* firearm—as in a knife that the victim thought might have been a gun—then § 18.2-308.2 is off the table. *See Startin*, 281 Va. at 382, 706 S.E.2d at 878. Instruction Seven flouts that critical difference.

As a fallback, the Director claims that, even if the jury did not receive proper "firearm" instructions in phase two, Jackson's counsel might have reasonably assumed that the jury had decided he possessed a § 18.2-308.2 firearm during the first phase because Instruction Six used that statute's standard. But whether Jackson possessed an *actual* firearm was never before the jury in the first phase, as Instruction Seven makes clear. The jury's determination in the first

6

phase thus left open the primary factual question for the second phase. And, as discussed above, the evidence did not show the object was an actual firearm. *See supra* pp. 2–4.

Finally, the Director argues for the imposition of an inappropriate legal standard. He argues for the cause-and-actual-prejudice standard from *United States v. Frady*, 456 U.S. 152 (1982), suggesting that Jackson must prove "a substantial likelihood" that the verdict would have come out in his favor under proper instructions. Resp't Br. 11. But that standard applies to collateral constitutional challenges that a habeas petitioner failed to raise on direct appeal. *Frady*, 456 U.S. at 167. Jackson claims ineffective assistance of counsel—a claim he could not raise *until* collateral proceedings. *See Fowler v. Joyner*, 753 F.3d 446, 462 (4th Cir. 2014). The familiar, "less stringent" *Strickland* standard governs that claim. *See, e.g.*, *United States v. Allgood*, 48 F. Supp. 2d 554, 559 (E.D. Va. 1999). Applying that rubric in the jury-instruction context, Jackson need only show a reasonable probability that at least one juror would have reached a different determination under proper instructions. *See Hope v. Cartledge*, 857 F.3d 518, 523 (4th Cir. 2017). Claim II meets that standard.

### Claim III: Incorrect Instruction Defining a § 18.2-53.1 "Firearm"

Under Claim III, Jackson raises his trial counsel's failure to object to the erroneous instruction and propose an alternative instruction defining "firearm" for the § 18.2-53.1 use-of-a-firearm charge. *See* Pet. 33. During the first phase, the jury heard Instruction Six—which gave a definition that applied to § 18.2-308.2—and Instruction Seven—which imposed an exception that applied only to § 18.2-53.1. As a result, the jury received erroneous instructions on the meaning of "firearm" for the use-of-a-firearm charge. Jackson's counsel should have objected and insisted on a coherent and accurate definition. Because at least one juror likely would have reached a different determination of guilt on the § 18.2-53.1 charge with a proper definition of "firearm," Jackson was constitutionally prejudiced by his trial counsel's deficient performance.

7

The Director argues that Jackson's trial counsel performed reasonably because Instruction Six was a correct statement of Virginia law. But that's only partly right: Instruction Six was correct about *a* Virginia law (§ 18.2-308.2), but not one that Jackson was on trial for during the first phase (§ 18.2-53.1). Whatever may have been "correct" about Instruction Six in a vacuum is incorrect when applied to the wrong charge.

Even so, the Director claims Jackson cannot show prejudice, because the evidence presented at trial was sufficient to show a § 18.2-53.1 firearm. It wasn't. That statute requires proof of either an operable firearm or an object with the appearance of being an operable firearm. *See Startin*, 281 Va. at 382, 70 S.E.2d at 878 (defining an operable firearm as an object with "physical capability of firing a projectile by explosion" or one "that has the *appearance* of having the capability of an actual firearm"). No evidence supported either prong of that element. The Director touts the store owner's testimony, but the owner said the object may have been a knife, and he did not offer any testimony suggesting the object was an operable firearm. *See* Pet. 36–38. Similarly, the testimony of Jackson's alleged co-conspirator Javon Johnson gave a simple description of the object, not its putative operability as a firearm. *See* Pet. 36–37. The jury considered the character of that object central to its deliberations, because it asked the trial judge to remind them what the store owner had said "regarding the alleged object in the Defendant's hand." (Tr. 188:15–16.) Had the trial court properly instructed jury on the operability requirement of § 18.2-53.1, there is a reasonable probability at least one juror would have reached a different determination. *See Hope*, 857 F.3d at 523.

The Director complains that Jackson's Claims II and III are contradictory. But the Director treats the "firearm" requirements from the two statutes like concentric circles, where the broader statute always encompasses the narrower one. *See* Resp't Br. 16–17. In truth, the

8

interplay is more analogous to a Venn diagram: some objects always satisfy both statutes (like operable actual firearms); other objects will satisfy the felon-in-possession definition but not the use-of-a-firearm definition (like an inoperable actual firearm not given the appearance of operability); and yet other objects will satisfy vice-versa (like a non-firearm instrument given the appearance of operability). *See* Pet. 18–20. The overlap in these statutes demands careful treatment by courts and lawyers. The Director's oversimplification exemplifies trial counsel's prejudicial failure to object to the erroneous conflation of the two firearm-related charges. Counsel should have objected to the trial court's one-firearm-fits-all treatment of the statutes.

**Claim IV: Incorrect Instruction of "Use" under § 18.2-53.1**

Under Claim IV, Jackson raises his trial counsel's failure to object to the trial court's erroneous instruction of "use" for the § 18.2-53.1 use-of-a-firearm charge. *See* Pet. 38. That statute requires the Commonwealth to prove the defendant "used or attempted to use the firearm or displayed the firearm in a threatening manner" during the commission of a robbery or other enumerated felonies. *See Yarborough v. Commonwealth*, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994). When instructing the jury, the trial court told the jury that it could convict Jackson only if it found he "used" a firearm—there was no mention of "display." Yet when the jury sent a question seeking the definition of "use," the trial court told them "use" means "display."

Jackson's counsel should have objected to that supplemental instruction for two reasons. *First*, because the trial court instructed the jury on only "use" and not "display," that narrower standard became law of the case. Jackson's counsel should have objected to the after-the-fact revision to add back in the "display" element. *Second*, even if "display" could have properly returned to the instructions after the Commonwealth omitted it from its proposed and given instruction, mere "display" is not enough under § 18.2-53.1—the display must be threatening. On either or both bases, Jackson's counsel should have objected. And if the supplemental

9

instruction had properly defined either "use" or "display," Jackson likely would not have been convicted, because the evidence did not establish either element.

On this claim, the Director challenges the applicability of the law-of-the-case doctrine to jury instructions at trial. But the Supreme Court of Virginia has emphasized that "[i]t is well settled that instructions given without objection become the law of the case *and thereby bind the parties in the trial court*," as well as on appeal. *Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.*, 237 Va. 649, 652, 379 S.E.2d 344, 346 (1989) (emphasis added); *see, e.g.*, *Ulloa v. QSP, Inc.*, 271 Va. 72, 80, 624 S.E.2d 43, 48 (2006) (explaining that the jury did not have to make a factual determination beyond what was required under the agreed upon instructions). In fact, the Supreme Court has recognized that when prosecutors tender instructions that require a narrower or harder standard for conviction, and the court gives the jury those instructions, the instructions "become *law of the case*, even though contrary to the statute, and the Commonwealth had the burden to prove" its case under the instructed standard. *Banks v. Commonwealth*, 217 Va. 527, 532, 230 S.E.2d 256, 260 (1976) (emphasis added).

That is exactly what happened here. The prosecutors submitted an agreed-upon instruction for § 18.2-53.1 that omitted "display" and thus could convict Jackson only if the jury found he had "used" a firearm during the robbery. (Tr. 168:9–14.) That instruction became law of the case once given to the jury. *See Banks*, 217 Va. at 532, 230 S.E.2d at 260. So when the jury later asked the court to define "use," Jackson's trial counsel should have objected to the "display" definition. And because there was no evidence that Jackson had "used" a firearm— employed the putative weapon to cause physical injury—a properly instructed jury would not have convicted him under § 18.2-53.1. *See Rose v. Commonwealth*, 673 S.E.2d 489, 492 (Va.

10

Ct. App. 2009) (defining the "use" element of § 18.2-53.1 as action "intended to cause physical injury").

In the alternative, the Director claims the supplemental instruction was correct. With that argument, the Director, like the trial court, conflates the disjunctive use-*or*-display elements of the crime. *See, e.g.*, Resp't Br. 20 (contending the trial court was correct "that the gun had to be seen to be used"). But "the victim's perception is relevant only in instances where the object is being displayed, *not used*." *Rose*, 673 S.E.2d at 494 (emphasis added). Thus, under these two offenses, "the distinction between using and displaying a firearm is critical." *Id.* at 493. "Use" of a firearm requires proof that the object was employed to cause physical injury. *See id.* at 492. "Display" under the statute requires the defendant to "manifest it to any of the victim's senses" and do so in a threatening manner. *Rowland v. Commonwealth*, 281 Va. 396, 401, 707 S.E.2d 331, 334 (2011). In all events, mere visibility of the alleged weapon is not enough. *See Dezfuli v. Commonwealth*, 707 S.E.2d 1, 5 (Va. Ct. App. 2011) (recognizing "in cases involving the threatening display of a firearm under Code § 18.2-53.1, the defendant must display his firearm to 'promise punishment, reprisal, or other distress to' the victim," not "merely brandish or display a firearm in such a manner as to reasonably 'bring about or cause fear' in the mind of the victim").

The trial court's explanation that "use" means "display" was wrong. A timely objection to that error would have compelled a proper definition of "use." And because no evidence suggested Jackson "used" a firearm during the robbery, at least one juror would have reached a different result.

The Director fails to respond to Jackson's alternative argument over the trial court's definition of "use": even if the law of the case did not prohibit the reintroduction of "display" as

11

an element of the § 18.2-53.1 offense, the trial court's simplistic use of "display" was also wrong under the statute. As explained above, the statute criminalizes *threatening* display, not the mere visibility of a weapon. *See Yarborough*, 247 Va. at 218, 44 S.E.2d at 344; *Dezfuli*, 707 S.E.2d at 5. Jackson's counsel should have objected to the trial court's "threatless" definition and insisted on the correct definition, which requires proof that the defendant showed the weapon to the victim in a manner "to promise punishment, reprisal, or other distress to the victim." *Dezfuli*, 707 S.E.2d at 5 (internal quotation marks omitted).

Even crediting the store owner's testimony that the object may have been a gun and that he did not call the police out of fear, no one testified that the weapon had been displayed to produce that result. At best, the gunman held the object in his hand during the robbery—but that does not meet the standard of "threatening display." *See id.* (noting § 18.2-53.1 does not cover "merely brandish[ing] or display[ing] a firearm in such a manner as to reasonably 'bring about or cause fear' in the mind of the victim"). Properly instructed, at least one juror likely would have reached a different conclusion, so Jackson was prejudiced by his lawyer's constitutionally deficient performance. *See Hope*, 857 F.3d at 524.[3]

### Claim V: Insufficient Evidence of "Use" or "Display" under § 18.2-53.1

Under Claim V, Jackson raises his trial counsel's failure to move to strike the § 18.2-53.1 charge based on insufficient proof that Jackson used or displayed the alleged firearm in the manner required for conviction under that statute. *See* Pet. 44. As explained above in Claim IV,

---

[3] The Director argues that a trial court can give supplemental instructions to assist the jury, even over the objection of the defendant. *See* Resp. Br. 18–19. That misses the point. No doubt it was proper for the trial court to respond to the jury's question of law about the meaning of "use" under § 18.2-53.1. But a question of law requires an accurate answer under the law. Jackson's lawyer provided ineffective assistance when he (a) failed to object to the substitution of "display" for "use" and (b) failed to object to an instruction on "display" that omitted the requirement that the display be threatening.

12

there was no evidence that Jackson employed the object to cause physical injury or that he evinced it to the owner's senses in a manner that promised retribution or punishment. *See supra* pp. 9–12.  Jackson's lawyer should have moved to strike the evidence, and his failure to do so rendered his assistance prejudicially ineffective.

The Director first attacks Claim V by contending that Jackson's counsel *did* move to strike the evidence on the § 18.2-53.1 use-of-a-firearm charge.  In particular, the Director points out that Jackson's counsel said the word "used" during his argument to the trial court.  But that's no surprise given that the charge itself was often called the "use of a firearm in the commission of a felony" charge.  (*See, e.g.*, Tr. 159:16–17, 160:3–4.)  In truth, Jackson's counsel aimed his motion to strike at the firearm element of the offense, not its use-or-display requirement:

> And lastly I would like to move to strike the use of a firearm in the commission of a felony case and I would refer the Court back to [the store owner's] testimony.  He was somewhat difficult to understand but I believe what I heard him say was that *he saw something, it might have been a gun or maybe it was a knife*, and again, the Commonwealth has got to establish *that actually a firearm* was used in this, in this robbery and I don't think that they have established that.

(Tr. 159:16–160:1 (emphasis added).)  The obvious thrust of that motion to strike—emphasizing the store owner's "knife" testimony and pointing out the requirement "that actually a firearm" had to be part of the crime—went only to whether the Commonwealth had proven the existence of a firearm.

By contrast, counsel did not point out the insufficient testimony on use or display.  It should have been obvious, however, that the Commonwealth had not put on evidence that Jackson employed the object to cause physical injury or manifested it to the store owner's senses to promise punishment or reprisal.  *See Dezfuli*, 707 S.E.2d at 5 (emphasizing the distinction between "threatening display" under § 18.2-53.1 and brandishing a firearm in a way that induces

13

fear). Because the Commonwealth failed to prove either use or display, there is a reasonable probability that a properly framed motion to strike the § 18.2-53.1 charge would have been granted. *See Grueninger*, 813 F.3d at 530 & n.9. Jackson's counsel failed to raise that motion and thus provided prejudicially deficient assistance.[4]

### Claim VI: Jury Instruction on Accomplice Testimony

Under Claim VI, Jackson raises his trial counsel's failure to seek a jury instruction warning of the concerns associated with uncorroborated accomplice testimony. When the only testimony connecting a defendant to a crime comes from alleged criminal cohorts involved in the crimes underlying his trial, Virginia law *requires* the trial court to give that instruction. The instruction was required here, when the only individuals connecting Jackson to the crimes—Javon Johnson, Cierra Owens, and Nicole Thompson—each were involved in the criminal conduct the night of the robbery. Jackson's counsel provided constitutionally ineffective assistance by failing to ask for the instruction, and Jackson was prejudiced by that failure.

The Director does not dispute that only Johnson, Owens, and Thompson are the only witnesses who placed Jackson at the robbery or in the possession of an alleged firearm. Nor does the Director deny that those three witnesses claimed to be insiders with knowledge of the criminal activities that night. Instead, he contests whether all three individuals were

---

[4] The Director argues Jackson's "[c]ounsel could have reasonably concluded Jackson used, displayed, or employed the gun to intimidate, threaten, or force the victim to surrender the money" and thus lacked a "legal basis to strike the charge on those grounds." Resp. Br. 22. That perplexing argument seems to suggest that Jackson's lawyer made the tactical decision not to move to strike based on his belief in his own client's guilt. Nothing in the record supports the suggestion. What's more, the Director cannot square that contention with counsel's attempts to strike the § 18.2-53.1 charge on other grounds. The failure to make the use-or-display argument in the motion to strike, like the other errors raised in the Petition, could not have stemmed from a strategic decision by counsel.

14

accomplices, then quibbles over whether an accomplice testimony instruction was required even if they were. These arguments are wrong.

First, the Director acknowledges that Johnson was an accomplice, but refuses to confront the evidence that Owens and Thompson were, too. Evidence introduced at trial—as well as discovery material made available to Jackson's counsel[5]—showed that the two women aided and abetted the robbery and could have been charged as accomplices. Both Owens and Thompson had advanced knowledge of the crimes and helped dispose of the ill-gotten gains afterwards. *See* Pet. 5–7. Their knowing receipt of stolen goods as part of the robbery subjected them to indictment for larceny, a lesser included offense of robbery. Va. Code § 18.2-108(A); *see* Pet. 55. The Director does not dispute otherwise.

Next, the Director argues that the accomplice testimony instruction was not required because Owens and Thompson had "no connection" to the firearm charges. But that position ignores that the two women were accomplices to the robbery charge. The Director cites no case holding that accomplice testimony instructions are appropriate only if the witness is an accomplice to *every* crime brought to trial. Nor would such a rule make sense. The concern underlying the instruction—that an accomplice will feel "the temptation to exculpate [him]self by laying the crime upon another"—applies just as much to scenarios in which a witness is an accomplice for one crime but not for another charged in the same trial. *See Brown v.*

---

[5] The Director declines to engage with the discovery materials based on his contention that jury instructions must be based on the facts at trial. Even if that rule applies to a request for an accomplice jury instruction—and the Director does not cite a case explaining it does—the evidence at trial was sufficient to show Johnson, Owens, and Thompson were each accomplices whose testimony warranted an accomplice testimony instruction. The failure of Jackson's counsel to grasp that important concept is made clearer by his apparent failure to review the discovery materials and introduce additional evidence at trial about Owens's and Thompson's involvement, which would have bolstered the need for the instruction.

15

*Commonwealth*, 382 S.E.2d 296, 298 (Va. Ct. App. 1989). Put otherwise, under the stress of potential criminal prosecution for robbery, Owens and Thompson were likely to inculpate Jackson on any charges they could bring to mind.

In any event, Owens and Thompson were accomplices to the firearms charges, because they could have been indicted on those charges as part of their participation in the overarching robbery conspiracy. Under Virginia law, "[e]ach conspirator is the criminal agent of the other, and when he accedes to the conspiracy he sanctions what may have been previously done or said by the others, or any of them, in furtherance of the common object." *Amato v. Commonwealth*, 352 S.E.2d 4, 9 (Va. Ct. App. 1987). According to Owens's and Thompson's own trial testimony, all the robbery participants gathered with Owens and Thompson beforehand, both women knew criminal activity was afoot, the men returned to the same house afterwards, and they distributed money and cigarettes Owens and Thompson. Those facts support probable cause that Owens and Thompson were members of the conspiracy and thus could have been indicted for any offense committed in furtherance of the scheme. That possibility amplified the need for an accomplice jury instruction and highlights the constitutional and prejudicial deficiency of failing to seek one.

In the alternative, the Director argues that an accomplice testimony instruction was not warranted because the victim's testimony corroborated the accomplices' testimony. But to be corroborative, "independent evidence must relate to some fact which goes to establish the guilt of *the accused* or tends to connect *the accused* with the crime." *Brown*, 382 S.E.2d at 298 (emphasis added) (internal quotation marks omitted). The store owner did not identify *any* person as a robber, so he could not connect Jackson to the crime. *See Smith v. Commonwealth*, 218 Va. 415, 457, 237 S.E.2d 776, 777 (1977) (finding reversible error when trial court refused

16

cautionary instruction on accomplice testimony that "directly implicated the defendant in the robbery," the victim "was unable to identify the defendant as one of his assailants," and "no other evidence tended to connect the defendant with the crime"). The only testimony placing Jackson at the robbery came from his supposed co-conspirators and accomplices, and one accomplice's testimony cannot corroborate another accomplice's testimony. *See Via v. Commonwealth*, 288 Va. 114, 116, 762 S.E.2d 88, 89 (2014).

In a last-ditch effort, the Director argues that the generic instruction about witness bias and credibility was sufficient to cure whatever prejudice resulted from counsel's failure to seek the otherwise required accomplice testimony instruction. *See* Resp't Br. 25. But that argument ignores the important difference between the instruction given to the jury and an appropriate accomplice testimony instruction. The former told jurors that they "*may* determine which witnesses are more believable and weigh their testimony accordingly." (Tr. 170:5–6.) By contrast, an appropriate accomplice testimony instruction would have given stronger commands to exercise caution in weighing uncorroborated testimony from an accomplice:

> Under the testimony given by [name of accomplice] in this case, [he/she] was an accomplice in the commission of the offense charged in the indictment, and while you may found your verdict upon the uncorroborated testimony of an accomplice, *it is your duty to receive such testimony with great care and caution*, and the court *warns you of the danger* of convicting the defendant upon the uncorroborated testimony of an accomplice.

Va. Prac. J.I. § 59:2 (emphasis added).

> [Name of accomplice] has testified that [he/she] was an accomplice in the commission of the crimes charged in the indictments. While you may find your verdict upon [his/her] uncorroborated testimony, *you should consider [his/her] testimony with great care* and *you are cautioned as to the danger* of convicting the defendant upon the uncorroborated testimony of an accomplice.

*Id.* § 59:3 (emphasis added).

17

> The court instructs the jury that, while you may find a verdict upon the unsupported testimony of an accomplice, *such evidence is to be received with great caution*. The court further instructs the jury that the testimony of an accomplice *must be received with great care and caution*, and if you believe the testimony of an alleged accomplice was false, and that [he/she] was induced to testify falsely either by fear of punishment or hope of reward, *you must disregard that testimony in its entirety*.

*Id.* § 59:4 (emphasis added); *cf. State v. Rambert*, 171 P.3d 398, 401 (Or. Ct. App. 2007) ("The material difference between the two instructions is that the former *permits* the jury to distrust the witness if it finds the witness is biased while the latter *requires* the jury to distrust the witness if it finds the witness is an accomplice."). The general instruction on witness credibility cannot alone cure the prejudicial failure to seek an accomplice testimony instruction. Had Jackson's lawyer sought the instruction, the trial court would have had to give it, and at least one juror likely would have reached a different determination. *See Hope*, 857 F.3d at 524. On that basis, Jackson is entitled to habeas relief under § 2254.

### Claim VII: Cumulative Prejudice

Finally, under Claim VII, Jackson asks the Court to consider the cumulative prejudice of each of his habeas claims. *See* Pet. 54. Under the cumulative-prejudice doctrine, "the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Woods*, 710 F.3d 195, 208 (4th Cir. 2013). Cumulative prejudice is in play here, where Jackson's trial counsel committed many errors on critical instructions and elements of proof that touched on all the charges brought by the Commonwealth.

The Director summarily dismisses the possibility of cumulative prejudice for Jackson, but courts in the Fourth Circuit have recognized that "cumulative errors may serve as the basis for habeas corpus relief." *Washington v. Clarke*, No. 17-cv-231, 2019 WL 1247512, at *4 (E.D. Va.

18

Mar. 18, 2019). Even cases cited by the Director recognize the viability of cumulative prejudice claims. *See Fisher v. Angelone*, 163 F.3d 835, 853 (4th Cir. 1998) (noting that legitimate cumulative-error analysis evaluates "the effect of matters actually determined to be constitutional error"); *Higgs v. United States*, 711 F. Supp. 2d 479, 522 (D. Md. 2010) (cumulative effect argument failed because underlying allegations of error were rejected); *Turner v. United States*, 484 F. Supp. 2d 490, 496 (W.D. Va. 2007); *cf. Higgs v. United States*, 711 F. Supp. 2d 479, 552 (D. Md. 2010) (review based on cumulative effect is available where individual constitutional errors are found). Of course, the Court must first assess Jackson's allegations of ineffective assistance of counsel individually. Because those claims of constitutional error are substantial and meritorious, the Court can properly find that the resulting prejudice, whether individually or collectively, deprived Jackson of his Sixth Amendment right to counsel.

## Conclusion

As explained in Jackson's Petition and above, Jackson's convictions and sentence violated his Sixth Amendment right to effective assistance of counsel. Each claim raised in the Petition is substantial and meritorious, and Jackson is entitled to relief from this Court under 28 U.S.C. § 2254. The Court should reject the Director's suggestions otherwise and deny the motion to dismiss.

Respectfully submitted,

**DARRYL SYLVESTER JACKSON**

By Counsel:

  /s/ Kevin S. Elliker
Kevin S. Elliker (VSB No. 87498)
Ann Hancock (VSB No. 91010)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219

19

Telephone: (804) 788-8656
kelliker@HuntonAK.com
hancocka@HuntonAK.com

Carter C. Simpson (VSB No. 81988)
*Admitted to W.D. Va. pro hac vice*
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
csimpson@HuntonAK.com