# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **DARRYL SYLVESTER JACKSON,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:19-cv-00006** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD W. CLARKE, Director,** | ) | **By: Norman K. Moon** |
| **Respondent.** | ) | **Senior United States District Judge** |

Petitioner Darryl Sylvester Jackson, a Virginia inmate, by counsel, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement following a judgment rendered by the City of Winchester Circuit Court. In that judgment, he was sentenced to 15 years, with one year suspended, for the following convictions: robbery, conspiracy to commit robbery, use of a firearm in the commission of robbery, and possession of a firearm by a convicted felon.

In his petition, Jackson asserts seven claims for ineffective assistance of trial counsel. Respondent has filed a motion to dismiss Jackson's § 2254 petition, and Jackson, by counsel, has responded, making the matter ripe for disposition.

Claim 1 was raised and addressed in Jackson's state habeas proceeding, but the remainder of his claims were not. At the time Jackson filed his state habeas petition, he was not represented by counsel. After the state statute of limitations had run, the Supreme Court of Virginia appointed counsel to represent Jackson. Counsel twice requested leave to amend the petition to raise the additional claims, but the request was denied both times. Therefore, these six claims are procedurally defaulted. Upon review of the record, I conclude that Jackson has raised a "substantial constitutional claim" only in claim 2, so he is unable to overcome the procedural

default for the remaining claims, claim 3 through claim 7, and I will grant respondent's motion to dismiss claims 3 through 7 as procedurally defaulted.

Considering the merits of claim 1, I conclude that the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was the decision based on an unreasonable determination of the facts. On claim 2, Jackson shows that counsel's performance was deficient, but he has not shown that the deficiency had a substantial and injurious effect on the results of the trial. Accordingly, I will grant the respondent's motion to dismiss claims 1 and 2 on the merits.

## I. FACTUAL BACKGROUND

The Supreme Court of Virginia accurately set forth the facts presented at trial, in the light most favorable to the state:

> [O]n the night of the robbery, while spending time with friends at an apartment, Jackson announced that he was going to "hit a lick," meaning to commit a robbery, or, alternatively, he may have said "let's go get some money," which those present understood to mean "[j]ust go rob somebody off the street." Javon Johnson and Dajuan Doleman left with him. Jackson had a weapon with him, which several witnesses described as a gun. Johnson saw the gun, testifying that it was a black and silver handgun. According to Johnson, when the three reached the Caribbean Food Store, Jackson and Doleman went inside, while Johnson waited outside.
>
> The owner of the business, Clifford "Shorty" Farquharson, saw the men burst into his store. The men demanded that he open the register. When Farquharson said he needed to get the key, one of the men slid under the counter, grabbed some money that was under the register, and took some cigarettes and cigars, as well. Farquharson recalled that the robber had a "gun or a knife" in his hand. He also testified he did not initially call the police when the men entered the store because "they had a gun." When Johnson walked in, he could see Jackson with the gun in his hand saying "give me the money."
>
> When Jackson returned from the robbery, his gun was in his waistband. The trio returned with cigarettes and money. Nicole

> Thompson saw the gun when Jackson returned from the robbery. The group divided up the money and cigarettes, and took celebratory photographs. The gun was never found. It is undisputed that Jackson was previously convicted of a felony.

*Jackson v. Clarke*, Nos. 1415951 and 170843 (Va. May 31, 2018). (Habeas R. 851–52.)[1]

Defense counsel's theory of the case at trial was that Jackson was not involved in the robbery. (*See generally* Habeas R. 254–58.) Jackson regularly patronized the store, but the owner could not identify him as one of the robbers; no physical evidence connected him to the crime, and the only evidence placing Jackson at the scene was the testimony of "co-conspirators and accomplices" who had received generous treatment from the state in exchange for their testimony. (*Id.*)

## II. PROCEDURAL HISTORY

On November 18, 2014, a grand jury for the Circuit Court of the City of Winchester indicted Jackson for robbery in violation of Virginia Code section 18.2-58, use or attempt to use a firearm or display it in a threatening manner while committing a felony in violation of Virginia Code section 18.2-53.1, possession of a firearm by a convicted felon in violation of Virginia Code section 18.2-308.2, and conspiracy to commit robbery in violation of Virginia Code sections 18.2-22 & 58. (Habeas R. 439–42.) Jackson elected to be tried by jury on all counts. On March 30, 2015, a duly empaneled jury heard the evidence on three of the charges—conspiracy, robbery, and use of a firearm while committing robbery. At the conclusion of the state's evidence, Jackson's counsel moved to strike the evidence on the grounds that the Commonwealth had failed to prove

---

[1] The Supreme Court of Virginia's well-organized record of the state habeas case included all relevant pleadings, transcripts, and other incidents of the original trial, as well as the pleadings in the habeas case. Paper copies of this record are on file with the Clerk and referred to herein as "Habeas R.," whether the document referenced originated in the original trial and appeal or in the habeas case. The page numbers refer to the first typewritten numbers in the lower left corner of those records, which were typed as "[#] of 876."

beyond a reasonable doubt that Jackson was one of the robbers on the night in question and had

failed to prove that the robber had a gun. (Habeas R. 235–37.) The defense put on no evidence,

and counsel renewed his motion to strike, which the court again overruled. (*Id.* at 240–41.)

The court instructed the jury on the law to apply to the case. As pertinent to Jackson's

claims in this § 2254 petition, the court's instructions included the following:

INSTRUCTION NO.: 5

The defendant is charged with the crime of using a firearm while
committing a robbery. The Commonwealth must prove beyond a
reasonable doubt each of the following elements of that crime:

(1) That the defendant used a firearm; and

(2) That the use was while committing robbery.

If you find from the evidence that the Commonwealth has proved
beyond a reasonable doubt each of the above elements of the offense
as charged, then you shall find the defendant guilty . . . .

(*Id.* at 305.)

INSTRUCTION NO.: 6

A firearm is an instrument designed, made, and intended to expel a
projectile by means of an explosion. *It is not necessary that the
firearm be operable, capable of being fired, or have the actual
capacity to do serious harm.*

(*Id.* at 306 (emphasis added).)

INSTRUCTION NO.: 7

Where a victim reasonably perceived a threat or intimidation by a
firearm, it is not necessary that the object in question was in fact a
firearm.

(*Id.* at 307.) No instruction was offered regarding accomplice testimony.

The jury deliberated for some time, and then sent out a paper with several questions: (1)

What was Shorty's answer about the object in the defendant's hand? (2) What was Davon

Johnson's statement about use of the firearm? (3) Define "use" while committing robbery. (*Id.* at 266–67, 456.) Before bringing the jury in to answer their questions, the judge advised counsel that he intended to advise the jurors that he couldn't answer the first two questions, and for define "use" of a firearm, he said, "What that means is it had to be actually an active part of the criminal transaction. In other words, it had to be out and displayed. If it was hidden in a coat or something and not used and not visible it wasn't used even though it was present." (*Id.* at 265–66.) Defense counsel stated for the record that he had "no objection to those answers." (*Id.* at 266.) The trial court then had the jury returned to the courtroom and advised that he could not answer the first two questions; the jurors would need to rely on their own recollection of the evidence. He answered the final question by telling the jury:

> That means the use of a firearm, for instance, that it had to be displayed incident to the crime. In other words, if the victim can't see it, it wasn't a factor. It would have had to have been displayed so that under circumstances that it is probable or in this case beyond a reasonable doubt that the Defendant saw it, the victim saw it. That is what use means. It would have had to have been displayed as part of the crime. That is separate because the victim would never know it was there.

(*Id.* at 267.) After deliberating further, the jury returned with guilty verdicts on all three charges, and the individual jurors, upon being polled, each affirmed that this was his or her verdict. (*Id.* at 270–72.)

The parties and court had agreed that after the first trial, the same jury would hear the trial on the remaining charge, possession of a firearm by a convicted felon. The court indicated that the second trial would be very short, because "we do have something called collateral estoppel." (*Id.* at 264.) After the jury had returned verdicts on the first three charges, defense counsel asked the court to proceed with the second trial before having the jury undertake the sentencing phase,

so that the jury would need only preside over a single sentencing hearing on all four charges. (*Id.* at 273.) The court and Commonwealth agreed.

The second trial was quite brief. Both attorneys delivered one paragraph opening arguments. The Commonwealth's attorney noted that they had already found Jackson guilty of three charges, and then said, "He, as you will see from our evidence today, was previously convicted of a felony, actually felonies. Because of that he is also guilty of (sic) a felon in possession of a firearm and that is all I am going to keep it to today." (*Id.* at 276.) Defense counsel, equally brief, said "I would ask you to consider finding him not guilty but I realize what you have already done based on the evidence you have seen so far so I won't repeat the arguments I have made earlier. I would ask you to consider finding him not guilty on this charge." (*Id.*) The Commonwealth's only evidence was a set of multiple prior conviction orders, apparently both felonies and misdemeanors. (*See id.* at 281.) Defense counsel did not object to the multiple orders and declined the opportunity to stipulate that Jackson was a convicted felon. (*Id.* at 274.) The defense offered no evidence. Defense counsel made a motion to strike the evidence "for the reasons I stated in the previous case," emphasizing the theory that Jackson was not present for the robbery and was not the person with any gun at the robbery. (*Id.* at 278.) The court denied the motion.

The court instructed the jury to rely on instructions one, two, and eight through twelve from the prior trial, pertaining to presumption of innocence, circumstantial evidence, defendant's right not to testify, and credibility of witnesses. (*Id.* at 279.) He notably did not include instructions six and seven from the prior trial, defining "firearm." He read one new instruction to the jury, instruction thirteen, identifying the elements of possession of a firearm by a convicted felon. (*Id.*

at 280.)   After closing arguments even shorter than opening statements, the jury retired to deliberate, and then returned with another guilty verdict.

The sentencing phase included the same prior conviction orders and the testimony of one defense witness—Jackson's mother.  The court instructed the jury on the appropriate sentencing ranges and sent them to deliberate.  They returned with a total sentencing recommendation of 15 years, consisting of 6 years for robbery, 1 year for conspiracy, 3 years for use of a firearm in commission of robbery, and 5 years for felon in possession of a firearm.  (*Id.* at 294–95, 457–59.) The court ordered a presentence report and set the matter for hearing on June 8, 2015.

On June 8, 2015, the court imposed the 15-year sentence and suspended one year of it.  (*Id.* at 460–65.)  Jackson then appealed his conviction and sentence, raising a single issue, that the evidence was insufficient to support his convictions.  Viewing the evidence in the light most favorable to the prevailing party, the Court of Appeals of Virginia found the evidence sufficient and denied the appeal on November 5, 2015.  (*Id.* at 339–42.)  Jackson's petition to the Supreme Court of Virginia was denied on June 29, 2016.  (*Id.* at 39.)

On June 26, 2017, Jackson filed his pro se petition for habeas relief in the Supreme Court of Virginia, raising a single issue: Ineffective assistance of counsel for failing to move to strike the state's evidence on the grounds that the government offered no proof that he possessed an actual firearm.  (*Id.* at 40.)   On December 6, 2017, a panel of the court appointed counsel for Jackson, set a briefing schedule, and placed the matter on the docket for a hearing.  (*Id.* at 65, 71.)  Counsel sought leave to file an amended petition on January 5, 2018, to raise six additional claims of ineffective assistance of counsel.  (*Id.* at 70–76.)  The court denied the motion for leave on January 11, 2018.  (*Id.* at 413.)  Counsel filed a motion for reconsideration on the motion for leave to amend on February 26, 2018.  (*Id.* at 743–54.)  Again, the court denied the motion.  (*Id.* at 850.)  In a 4-3

decision, the court denied Jackson's state habeas petition on May 31, 2018. (*Id.* at 851–58.) Counsel filed a petition for rehearing on June 26, 2018, which was denied by order entered on October 5, 2018. (*Id.* at 861–73, 875.) The current § 2254 petition followed on January 4, 2019, raising seven claims for ineffective assistance of counsel.

## III. CLAIMS

In his current timely petition, Jackson raises the following seven claims of ineffective assistance of counsel:

(1) Failure to move to strike the evidence on the felon in possession of a firearm charge on the grounds that the state failed to prove that he possessed an actual firearm;

(2) Failure to request an instruction defining "firearm" for purposes of the felon-in-possession statute;

(3) Failure to object to the instruction improperly defining "firearm" for the charge of using a firearm in the commission of robbery;

(4) Failing to object to the court's incorrect definition of "use" of a firearm in response to the jury's question;

(5) Failing to move to strike the evidence on using a firearm in commission of robbery when the evidence was insufficient to prove either "use" or "threatening display";

(6) Failing to request an instruction on dangers of convicting someone based on uncorroborated accomplice testimony; and

(7) Cumulative effect of the above errors deprived Jackson of his right to constitutionally effective assistance of counsel.

(Pet. i–ii, Dkt. No. 1.)

# IV. DISCUSSION

A.  Exhaustion and Procedural Default

A claimant is required to exhaust his state court remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b)(1)(A).  To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court before he is entitled to seek federal habeas relief.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles."  *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002) (internal quotation marks and citation omitted).  Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance."  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  A claim that has not been presented to the highest state court will be treated as exhausted if the claim would clearly be procedurally barred under state law if the petitioner attempted to present it to the state court now.  *Gray v. Netherland*, 518 U.S. 152, 161 (1996).  When the petitioner has procedurally defaulted his claims in state court, those claims are simultaneously exhausted and defaulted.  *Coleman*, 501 U.S. at 732.  Usually, the procedural bar that gives rise to exhaustion and default is an "independent and adequate state-law ground" for the conviction and sentence, preventing federal habeas review of the defaulted claim.  *Gray*, 518 U.S. at 162.

Jackson's first claim of ineffective assistance of counsel was fully presented to the Supreme Court of Virginia, the highest court of the state, in his state habeas claim.  Therefore, I will review that claim on the merits, pursuant to § 2254(d), after discussing the remaining claims that were not presented to Virginia's highest court.

Jackson's remaining claims of ineffective assistance of counsel, claims two through seven, were not considered by any state court, and the time for raising new issues in state habeas has long

since expired.[2]  Counsel attempted to obtain leave to file an amended petition to raise those issues in state court, but the court denied leave, perhaps because the state statute of limitations had passed by the time counsel was appointed.  These claims are deemed exhausted, because Jackson has no further state remedies available.  Because they were not presented to or considered by the state court, however, they are deemed procedurally defaulted.

A state prisoner can obtain federal habeas review of a procedurally defaulted claim if he shows both cause for the default and actual prejudice as a result of the claimed federal violation. *Coleman*, 501 U.S. at 750.  Negligence of counsel is not normally good cause for relief from a defaulted habeas claim, but when a petitioner seeks federal relief for a defaulted claim of ineffective assistance of counsel at his trial, the Supreme Court held in *Martinez v. Ryan* that cause and prejudice for default can be established if certain conditions are met.  566 U.S. 1, 13–15 (2012).  The Court outlined those conditions again in *Trevino v. Thaler*, 569 U.S. 413 (2013). They are (1) that the claim of ineffective assistance of trial counsel is a "substantial claim;" (2) the "cause" is the lack of counsel or ineffectiveness of counsel at the initial state habeas proceeding, under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984); (3) that the state post-conviction proceeding was the first time ineffective assistance of counsel was raised; and (4) that the state post-conviction proceeding was the first one in which petitioner was actually or effectively allowed by state law to raise the claim.  *Trevino*, 569 U.S. at 423; *Martinez*, 566 U.S. at 13–15.

---

[2]  Under Virginia Code § 8.01-654(A)(2), a petition for state habeas relief must be filed within two years from the date of final judgment in the trial court or within one year from final disposition of the direct appeal in state court, whichever date is later.  Jackson's direct appeal in state court concluded when the Supreme Court of Virginia declined to hear his appeal, June 29, 2016, which means that June 29, 2017, was the latest date he could file a petition for habeas relief in Virginia state courts.  Any state habeas claims filed now would be dismissed as untimely.

Three of the prongs of *Martinez* clearly apply here. At the time Jackson filed his state court petition, he had no attorney. The state appointed him an attorney after the statute of limitations had expired. His lack of counsel and attendant lack of knowledge of the law is the cause for his failure to raise claims two through seven in his initial petition. Once appointed, counsel diligently tried to present the claims to the court, without success. Prong two of *Martinez* is met because lack of counsel at the time he filed his state petition is the cause for his defaulting these issues.

Likewise, Jackson's state post-conviction proceeding was the first time he raised any issues of ineffective assistance of counsel, and under Virginia law, that is the first time that ineffective assistance claims can be raised. *Blevins v. Commonwealth*, 590 S.E.2d 365, 368 (Va. 2004). The remaining requirement for Jackson to overcome his procedural default is that his claims must be "substantial," meaning simply that the claim must have some merit. *Martinez*, 566 U.S. at 14. Having some merit does not mean that the claim entitles the prisoner to habeas relief; it means only that the federal court can consider the merits of a claim that otherwise would have been defaulted. *Id.* at 17. To determine if any of Jackson's claims two through seven are subject to federal habeas review on the merits, I will evaluate each claim to see if it is substantial.

- *Claim 2: Failure to request instruction defining "firearm" under Virginia Code § 18.2-308.2*

When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must meet both prongs of the test, because deficiency alone is inadequate, as is prejudice without constitutional deficiency.

Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id.* at 689–90.

Ordinarily, failure to offer additional or different jury instructions does not constitute ineffective assistance of counsel if the ones given by the trial court are proper. *Pruett v. Thompson*, 996 F.2d 1560, 1577 (4th Cir. 1993). In the present case, Jackson's trial for violating Virginia Code § 18.2-308.2, felon in possession of a firearm, was the second trial. In this trial, the court did not give an instruction defining "firearm." Although the jury had all of the instructions from Jackson's first trial, the court directed their attention to Instructions one, two, and eight through twelve from the first trial, and added a single new instruction, thirteen, stating the elements of the crime. (Habeas R. 279.) Neither the new instruction nor the referenced previous ones defined "firearm." Accordingly, there was no instruction given by the court on this issue for the second trial. Thus, I must determine whether counsel's failure to request such an instruction is deficient performance.

*Strickland* mandates deferential consideration of tactical decisions of counsel. In this case, however, it appears from the record that defense counsel and the trial court both considered the "firearm" issue already decided by the jury in the first trial to be res judicata, rather than recognizing that the law is otherwise as to felon-in-possession. Because the definition of "firearm" under § 18.2-302 is different, as a matter of law, from the definition of "firearm" under § 18.2-53.1, charged in the first trial, and because the definition under § 18.2-302 is narrower than the definition applicable to § 18.2-53.1, I see some merit to this claim of deficient performance. *See*

*Startin v. Commonwealth*, 706 S.E.2d 873, 878 (Va. 2011). For Jackson to survive procedural default, there must be some merit to both prongs of *Strickland*, prejudice as well as deficient performance.

Under *Strickland*, to establish prejudice, Jackson must show that there was "a reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. The state argues that Instruction No. Six from the first trial was the proper definition of firearm under § 18.2-308.2, and therefore, Jackson suffered no prejudice as a result of any deficient performance. This argument fails to consider that Instruction No. Six in the first trial was not given in a vacuum. The very next instruction, No. Seven, said "Where a victim reasonably perceived a threat or intimidation by a firearm, it is not necessary that the object in question was in fact a firearm." Without clarification, it is entirely conceivable that jurors were confused as to whether the object had to be a firearm in order to convict Jackson of violating § 308.2. When reviewing counsel's failure to request a jury instruction, prejudice is demonstrated if there is a "reasonable probability that at least one juror would have struck a different balance." *Wiggins v. Smith*, 539 U.S. 510, 537 (2003); *Hope v. Cartledge*, 857 F.3d 518, 524 (4th Cir. 2017).

I conclude that Jackson has stated a substantial claim for purposes of overcoming procedural default on this issue. Whether he can prevail on the merits of this claim will be discussed in Section B below, after considering whether the remaining five claims are substantial, as defined in *Martinez*.

- *Claim 3: Failure to object to the improper definition of firearm for § 18.2-53.1*

Instruction No. Six, defining "firearm" in the first trial, was not the correct definition for the offense under consideration, use of a firearm in commission of robbery under Virginia Code §

18.2-53.1.  Rather, the instruction was the definition of "firearm" for purposes of Code § 18.2-308.2, felon-in-possession.  *Startin v. Commonwealth*, 706 S.E.2d 873, 878 (Va. 2011).  That definition of firearm is actually narrower than the proper definition under § 18.2-53.1, which would include any instrument that gives the appearance of being a firearm.  *Id.*  In other words, Instruction No. Six required the jury to find that Jackson possessed an instrument "designed, made, and intended to expel a projectile by means of an explosion," although it was not necessary that the instrument was operable as designed.  Under § 18.2-53.1, the jury could convict Jackson of this charge even if he did not have such an instrument, operable or inoperable, if he appeared to have a firearm. Instruction No. Six left that alternative out, limiting the circumstances under which the jury could convict him.

Analyzing counsel's performance under the *Strickland* standard, highly deferential to strategies of counsel, I cannot say that counsel's performance was deficient for failing to object to this Instruction.  Counsel could well have hoped that the jury would have doubts about whether the weapon seen by the victim was actually a gun, especially given the focus of his argument to the jury.  It cannot be considered deficient for counsel to allow the court to give an instruction that makes it harder for the government to prove its case.

Nor does the record show any prejudice to Jackson from the incorrect instruction.  The instruction by itself imposed a stricter burden on the government.  When combined with Instruction No. Seven, that it is not necessary for the object to be a firearm if a victim reasonably perceived the threat of a firearm, the instructions as a whole were a correct statement of what constitutes a "firearm" for purposes of § 18.2-53.1.

Because Jackson fails to demonstrate deficient performance or prejudice on this issue, I conclude that this claim is not a substantial constitutional claim and that Jackson does not overcome the procedural default on this issue.

- *Claim 4: Failure to object to court's answer to the jury's question about the meaning of "use" of a firearm.*

Jackson correctly asserts that "use" of a firearm is different from "display" of a firearm in a threatening manner. The Commonwealth needed to prove only one of those elements. *Dezfuli v. Commonwealth*, 707 S.E.2d 1, 4–5 (Va. Ct. App. 2011). Although the Commonwealth charged Jackson with the full language of the statute (see Indictment, Habeas R. 440) and argued the threatening appearance of the weapon to the jury, the tendered jury instruction, No. Five, omitted any reference to "threatening display" of a weapon. As in the previous section, defense counsel could have made a tactical decision not to object to the incomplete instruction, because the error was to Jackson's benefit. There was no evidence that the firearm was fired or that someone was struck with the gun; the evidence was that he held the gun in his hand and demanded the money.

Against the background of the evidence and arguments of both counsel, when the jury asked for a definition of "use," it was reasonable for the trial court and counsel to assume that the real question was "Is carrying the gun so that the victim knows you have it when you demand the money enough to be 'use of a gun' or does he have to point it or fire it before it is 'used'?" At that point, in response to the jury's question, the court chose to instruct the jury on display of a weapon, clearing up the error in the previous instruction. "The trial court not only has the right but it has a duty to amend instructions which appear to be erroneous or misleading after summation by counsel and after the jury has retired to consider a verdict." *Blevins v. Commonwealth*, 166 S.E.2d 325, 330 (1969). While the court's wording of its answer was inartful and perhaps incomplete, I cannot say that counsel's performance was deficient in failing to object to the court's effort to respond

fully and completely to the jury's inquiry. *See Marlowe v. Commonwealth*, 347 S.E.2d 167, 171 (Va. Ct. App. 1986).

Jackson's argument that the instruction listing only "use" of the firearm as an element was "the law of the case," such that the trial court was no longer entitled to correct the instruction, is not supported by the case he cites. In *Banks v. Commonwealth*, the defendant was convicted of hit-and-run following a jury trial in which the government's tendered instruction advised jurors that defendant had the duty to report the accident and his information to the police ***or*** to the injured party; the instruction was erroneous because the statute required reporting to the police ***and*** to the injured party. 230 S.E.2d 256, 260 (Va. 1976). On defendant's appeal challenging the sufficiency of the evidence, the Supreme Court of Virginia held that the Commonwealth was bound by the instruction it had requested and received in the trial court. *Id.* While the matter was still in the trial court, as in this case, the trial judge could have answered the jury's question to explain the law and expand the previous instruction. *See Blevins*, 166 S.E.2d at 330.

Moreover, Jackson was not prejudiced by the poorly worded answer to the jury's question or counsel's failure to object to it. In order to convict Jackson of violating § 18.2-53.1, the jury had to find the following elements:

(1) That he possessed an object that was or reasonably appeared to be a firearm;

(2) That he used the firearm or displayed it in a threatening manner; and

(3) That this action occurred during the commission or attempt to commit the robbery.

*Dezfuli,* 707 S.E.2d at 4. The definition of firearm was covered in the prior section. Whether Jackson used a firearm or displayed it in a threatening manner is the element to which the jury's question was addressed. Jackson argues that simply displaying the gun is insufficient, because it must be displayed in a threatening manner. A "threat" is an indication "express or implied, of an

intent to inflict loss or pain on another" or "a person or thing that might well cause harm." *Threat*, Black's Law Dictionary (11th ed. 2019). The uncontradicted evidence is that Jackson had a gun in his hand when he said, "Give me the money." (Habeas R. 225.) Further, the store owner testified that he did not call the police until the robbers left the store because they had a gun. (*Id.* at 158.) When a person unknown enters a business, with a gun visibly in his hand, demanding money, that is a threatening display. A threatening display of what appears to be a firearm in the course of a robbery violates the statute. Because the evidence was clear, there was no prejudice to Jackson from counsel's failure to object to the court's answer to the jury's question.

Because Jackson has failed to establish either deficient performance or prejudice within the meaning of *Strickland*, claim 4 is not a substantial constitutional claim, and he has not overcome the default. That default precludes review by this court.

- *Claim 5: Failing to move to strike the evidence on use of a firearm in the commission of robbery, in violation of Virginia Code § 18.2-53.1, because of insufficient proof of "use" or "threatening display" of a firearm*

Courts applying the *Strickland* standard are highly deferential to strategic decisions of counsel. A petitioner must show that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." 466 U.S. at 688. Tactical decisions of counsel are afforded a presumption of reasonableness. *Id.* Jackson has not overcome the presumption of reasonableness on this issue. Trial counsel moved to strike the evidence on the grounds that the evidence was insufficient to prove either that Jackson was the robber or that there was a firearm used or displayed. Both arguments were part of the defense theory of the case. Given the evidence discussed above, that Jackson had what appeared to be a gun in his hand and said, "Give me the money," along with the victim's testimony that he did not call police because the robbers had a gun, it was reasonable for counsel to decide that a motion to strike on these

grounds would be futile.  *See Moody v. Director, Virginia Dep't of Corrections*, No. 1:14cv1581, 2016 WL 927184, at \*11 (E.D. Va. March 3, 2016).  Further, for the reasons discussed, the evidence of threatening display of a firearm was sufficient to overcome a motion to strike, so Jackson can demonstrate neither deficient performance nor prejudice.  *Elliott v. Warden of Sussex I State Prison*, 652 S.E.2d 465, 480–81 (Va. 2007).  With neither deficient performance nor prejudice, claim 5 is not a substantial constitutional claim, and Jackson has failed to overcome his procedural default.

- *Claim 6: Failing to request instruction on dangers of accomplice testimony*

This court has previously held that failure to give an instruction that accomplice testimony must be considered with caution is not error.  *McFalls v. Peyton*, 270 F. Supp. 577, 580 (W.D. Va. 1967).  While the instruction is "generally desirable," it is not mandatory. *Id.*  This is because the jury in Virginia may convict a defendant based upon the uncorroborated testimony of an accomplice.  *Dillard v. Commonwealth*, 224 S.E.2d 137, 138 (Va. 1976).  If there is no error in the trial court refusing to give such an instruction, there can be no prejudice resulting from counsel's failure to request the instruction.

Nor, under the facts of this case, was counsel's performance deficient in failing to request the instruction.  When accomplice testimony is corroborated, the instruction is not required and the court need not give it, even if requested.  *Id.* at 139; *Brown v. Commonwealth*, 382 S.E.2d 296, 298–99 (Va. Ct. App. 1989).  The corroboration needed does not have to be sufficient to support the conviction on its own; rather, the jury instruction is not required if the evidence corroborates "a material fact which 'tends to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony.'" *Brown*, 382 S.E.2d at 299 (citation omitted). The testimony of Thompson corroborates material facts that connect Jackson to the crime.  She

testified that he said he needed to go get some money, that he left with Javon Johnson and Dajuan Doleman (whose fingerprints were at the scene, Habeas R. at 187) and others; when they came back, Jackson was ecstatic that he had money. (*Id.* at 215–16.) In addition to money, he had cigarettes and cigars (the only items stolen from the Caribbean Food Store other than money, *id.* at 156), and he was carrying a gun on his hip. (*Id.* at 211.) All this testimony corroborates facts tending to connect Jackson with the crime and corroborates those portions of the testimony of Javon Johnson.

Jackson alleges that Thompson was herself an accomplice who could have been charged, and that accomplices cannot corroborate each other, citing *Via v. Commonwealth*, 762 S.E.2d 88 (Va. 2014). While that is a correct statement of the law regarding corroboration, Thompson was not an accomplice. She knew that Jackson "was going to get some money," and that he was probably up to no good, but she did not participate in planning or executing the robbery. She did not even know who or what he might take money from. She was also present when he returned with the fruits of the robbery. At most, she would be an accessory after the fact. The facts of this case are directly on point with *United States v. Jones*, 608 F.2d 1004 (4th Cir. 1979). In *Jones*, the court held that a witness was not an accomplice just because she had the defendants in her home when they told her a robbery would take place and then allowed them into her basement after the robbery had occurred. Noting that she could be charged, at most, with being an accessory after the fact, the court held that an accomplice instruction was properly denied. *Id.* at 1008.

Because Jackson was not entitled to the instruction, counsel's failure to request the instruction was not deficient performance, nor did Jackson suffer any prejudice because of counsel's failure to request the instruction. Accordingly, claim 6 is not a substantial claim, and Jackson has failed to overcome procedural default on this issue.

- *Claim 7: Cumulative effect of errors above deprived Jackson of a fair trial*

Ineffective assistance of counsel claims must be reviewed individually; an attorney's actions or omissions that are not unconstitutional individually cannot be added together to create a constitutional violation. *Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998) (quote and citation omitted). The court noted further that "cumulative-error analysis evaluates only effect of matters determined to be error, not cumulative effect of non-errors." *Id.* (citation omitted). Even when the court has considered cumulative error—generally on direct appeal—the court will reverse a conviction for cumulative error only "when the errors 'so fatally infect the trial that they violated the trial's fundamental fairness.'" *United States v. Woods*, 710 F.3d 195, 208 (4th Cir. 2013) (citation omitted) (declining to reverse and vacate conviction even though finding two individually harmless errors).

Jackson now has only two habeas claims that will be evaluated on the merits—claim 1 which was fully presented to the state court and claim 2 which states a substantial claim sufficient to overcome procedural default. Accordingly, this case is not one appropriate for cumulative error analysis. Jackson has not stated a substantial claim for cumulative error analysis, even if such claim were cognizable in this Circuit, and claim 7 is procedurally defaulted and barred from federal habeas review. Because claims 3 through 7 are procedurally defaulted, I grant the motion to dismiss claims 3 through 7.

B.  Claims Eligible for Merits Review

    1. *Claim 1: Ineffective assistance of counsel for failing to move to strike the evidence on the felon-in-possession of a firearm charge because of insufficient proof of an actual firearm*

        a. *Standard of Review*

Because Jackson presented this claim to the highest state court for full consideration on the merits, this court may grant habeas relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Likewise, the federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, the federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is "a substantially higher threshold." *Schriro,* at 473.

b.  *Contrary to or unreasonable application of clearly established federal law*

A motion to strike the evidence is a challenge to the sufficiency of the evidence to support a conviction beyond a reasonable doubt.  The Supreme Court of Virginia held that the evidence was sufficient to support Jackson's conviction, and that a motion to strike, if made, would not have been granted; therefore, the prejudice prong of the *Strickland* test for ineffective assistance of counsel was not met.  (Habeas R. 854–55.)  The court did not address the performance prong.

Under *Strickland*, a reviewing court strongly presumes that counsel rendered adequate decisions and that all significant decisions were made in the exercise of reasonable judgment.  466 U.S. at 690.  The *Strickland* standard is "doubly deferential" in the context of a habeas petition, because the deferential standard of review required by § 2254 overlaps with the deferential standard under *Strickland*.  *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).  In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense trial attorney.  *Woods*, 136 S. Ct. at 1151.

Applying this doubly deferential standard to the state's habeas decision, I conclude that Jackson has failed to establish that the habeas court's decision was contrary to or an unreasonable application of law as determined by the United States Supreme Court.  No Supreme Court decision has considered the sufficiency of the evidence to prove that a weapon is a "firearm" within the meaning of Virginia Code § 18.2-308.2 (or any other state felon-in-possession statute), although many state courts and lower federal courts have addressed the same or similar issue.[3]  Some cases

---

[3]  To an extent, what constitutes a "firearm" is a matter of state law, that is, how the legislature defines "firearm" and how the state court interprets the legislative intent of the state's statutes.  Federal courts on habeas review are not to re-determine state-law questions.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Nevertheless, sufficiency of the evidence to support a conviction, as defined in *Jackson v. Virginia*, 443 U.S. 307, 322 (1979), is a federal constitutional claim that is reviewable by a federal habeas court.

hold that items which are inoperable guns, toy guns, or understood in common usage to be "firearms," while not technically falling within the technical definition of a weapon capable of expelling a projectile by explosion, are still "firearms" that felons may not possess. *E.g.*, *State v. Webb*, 252 P.3d 424 (Wash. Ct. App. 2011); *Neumann v. People of New York*, 526 F. Supp. 286 (S.D.N.Y. 1981). Others have held that such evidence is not sufficient to support a conviction for felon-in-possession. *E.g., Evans v. State*, 758 So. 2d 1282 (Fl. Dist. Ct. App. 2000); *Commonwealth v. Rhodes*, 489 N.E.2d 216 (Mass. App. Ct. 1986). Accordingly, the Supreme Court of Virginia's habeas decision on claim 1 is not contrary to clearly established law.

Nor is the state court's decision an unreasonable application of federal law. The Supreme Court identified the proper legal standard for considering sufficiency of the evidence claims in *Jackson v. Virginia*, 443 U.S. 307 (1979). A federal habeas court can grant relief on such a claim only if the evidence at trial, in the light most favorable to the government, is such that no rational trier of fact could have found guilt beyond a reasonable doubt. *Id.* at 319, 324. That is similar to the standard used in Virginia: "When analyzing a challenge to the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prevailing party at trial and considers any reasonable inferences from the facts proved. . . . The judgment of the trial court will only be reversed upon a showing that it is 'plainly wrong or without evidence to support it.'" *Wilson v. Commonwealth*, 630 S.E.2d 326, 330 (Va. 2006) (quoting Va. Code § 8.01-680).

Applying that standard, the following evidence relied upon by the state court supports the verdict that Jackson, a felon, unlawfully possessed a firearm: Johnson's testimony that Jackson took a black and silver or gray handgun with him when they left with Doleman; testimony from Owens and Thompson that they saw a gun on Jackson's hip when he returned home; Johnson's testimony that Jackson was holding the gun when he told the victim "Give me the money"; the

victim's testimony that the robber had something in his hand that looked like a gun, or maybe a knife, and that he did not call the police because of the gun. This testimony and the inferences that can be drawn from it support a finding that Jackson possessed a gun. Jackson argues that Johnson's description of the gun was not sufficient, relying on *Redd v. Commonwealth*, 511 S.E.2d 436 (Va. 1999). In *Redd*, the Supreme Court of Virginia stated that the description of "a long black gun," *by itself* was insufficient to prove the existence of an actual firearm designed "to expel a projectile by the power of an explosion." *Id.* at 438. However, that description, combined with a verbal threat to kill the clerk, was an implied assertion that the object was designed and functioning as a firearm. *Id.* The description in this case, a black and silver or gray handgun, is corroborated by the unequivocal testimony of both Thompson and Owens that they saw a gun on Jackson's person. Finally, holding a gun in his hand while demanding money was an implied threat that the gun was a "firearm." *See Jordan v. Commonwealth*, 747 S.E.2d 799, 801 (2013) (pointing a gun, even without a verbal threat to kill, combined with description of a gun that looked like a Raven, was sufficient).

Under the deferential standard required by *Strickland*, I cannot say that the Virginia court unreasonably applied the standard of *Jackson v. Virginia*. Unreasonableness is a much higher standard than "incorrect." Even if I would have drawn different inferences from the facts, that is insufficient to meet the § 2254(d) standard of unreasonableness. Because the Virginia Supreme Court's finding that Jackson suffered no prejudice from counsel's failure to file a motion to strike is not unreasonable, this court cannot grant relief from the state court's decision.

Although the Supreme Court of Virginia did not address the deficiency prong of the *Strickland* analysis, from a review of the full record, I conclude that Jackson has failed to establish that counsel's performance fell below an objective standard of reasonableness. As discussed in

section IV(A)(4) above, strategies of counsel are accorded the highest deference. Because evidence supported a finding that Jackson had a firearm, counsel could reasonably have concluded that moving to strike the evidence on this ground would be futile. *Moody*, 2016 WL 927184, at *11.

      *c.   Unreasonable determination of facts*

      Jackson argues that the state court unreasonably determined that Jackson "pointed a firearm at the store owner." (Pet. 25.) Pursuant to § 2254(e)(1), a federal habeas court must start with the presumption that the court's factual findings are correct; Jackson must overcome this presumption by clear and convincing evidence, which he has not done. An unreasonable determination of facts is more than an incorrect determination of facts. *Schriro*, 550 U.S. at 473. Johnson testified that Jackson had a gun in his hand and said, "Give me the money." The victim never answered the question when asked if the gun was pointed at him. A factfinder could infer that holding the gun in his hand was "pointing" the gun. A factfinder could also conclude that a victim would feel intimidated by a robber with a gun in his hand whether or not the gun was actually pointed at him. Accordingly, Jackson has failed to prove an unreasonable determination of facts.

      Because Jackson has not shown that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, nor that the court based its decision on an unreasonable determination of the facts, pursuant to § 2254(d), I must grant the motion to dismiss as to claim 1.

      2.   *Claim 2: Failure to request instruction defining "firearm" as used in § 18.2-308.2*

      *a.   Standard of review*

      When a federal habeas court reviews a claim on the merits that has not been considered on the merits in the state's highest court, the court reviews the constitutional claim de novo. *Johnson*

*v. Williams*, 568 U.S. 289, 301–02 (2013).  Because the Supreme Court of Virginia never ruled on the merits of this claim, I will review this issue de novo.

> b.  *Whether counsel was ineffective within the meaning of* Strickland?

As discussed in section IV(A)(1) above, counsel's performance fell below the standard of reasonableness when he failed to appreciate that the definition of firearm under § 18.2-308.2 (felon-in-possession) was more stringent than the definition of firearm under § 18.2-53.1 (use of a firearm).  Not knowing the legal requirements necessary to support a conviction for each charge is below an objectively appropriate standard of care.

On federal habeas review, where a more onerous harmless error analysis applies, if the error is harmless, there can be no prejudice under *Strickland*.  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).  Jackson is entitled to relief only if the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  This is because habeas corpus is an extraordinary remedy designed to protect citizens from convictions that violate fundamental fairness, in which the defendant has been "grievously wronged" by society.  *Id.* at 633–34.  "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited."  *Id.* at 633.  Once the process of direct review is complete, including the right to petition the Supreme Court for a writ of certiorari, "a presumption of finality and legality attaches to the conviction and sentencing."  *Id.* Overturning such a conviction on collateral review "undermines the state's interest in finality and infringes upon their sovereignty over criminal matters."  *Id.* at 637.

When the Court adopted the "substantial and injurious effect" standard for harmless error in federal habeas cases, it expressly adopted the *Kotteakos* standard, articulated in *Kotteakos v. U.S.*, 328 U.S. 750 (1946).  In *Kotteakos*, the Court explained how the federal courts should apply

this standard, noting the difficulty of doing so. Deciding whether an error had a substantial and injurious effect requires the exercise of judgment after reviewing the entire record of the trial proceedings, "tempered but not governed . . . by what has been done in similar situations." *Id.* at 762. When considering the error in relation to the case as a whole, an error that is merely technical in one setting may be quite substantial in another. *Id*. at 761. After conducting the review of the whole record, the habeas court must decide if the error, in relation to everything else that happened, leaves the court with a firm belief that the error did not influence the jury and that the conviction should stand. *Id*. at 764. If the court cannot confidently conclude that the verdict was not substantially swayed by the error, then the conviction cannot stand. *Id.* at 765.

Upon review of the entire record here, I am firmly convinced that the jury was not influenced by the lack of a definitional instruction for "firearm" in the felon-in-possession trial. The jury heard from both Owens and Thompson that Jackson had a gun in the side of his waistband when he came back to the home with money and cigarettes. Johnson testified that he saw Jackson put the black and silver or gray handgun in his waist before they left to commit the robbery, and he testified that Jackson had the gun in his hand when he said, "Give me the money" at the Caribbean Food Store. The victim testified that Jackson had something in his hand that looked like a gun. Counsel argued reasonable doubt emphatically in the first trial, based solely on the victim's statement. In the second trial, however, the issue was not whether Jackson used a firearm during the robbery, but whether he possessed a gun. The unequivocal testimony of three witnesses—Johnson, Owens, and Thompson—is that Jackson possessed a gun. In today's society, handguns are seen in television shows, on the news, and in our communities. The jury accepted that these three witnesses knew what they were talking about when they said they saw Jackson with a gun. Jurors reached this conclusion even though defense counsel thoroughly attacked the

credibility and motives of the witnesses for testifying and argued that Jackson was not at the scene of the crime and had no gun. The jury simply rejected that argument, and I conclude that the lack of an instruction defining "firearm" had no "substantial and injurious" effect on that result. *Brecht*, 507 U.S. at 638.

Accordingly, Jackson has not established that he was prejudiced by the ineffective assistance of counsel in this claim, and I must grant the motion to dismiss claim 2.

## V. CONCLUSION

For the reasons stated, I will grant Respondent's motion to dismiss. The claims addressed above on the merits, claims 1 and 2, do not entitle Jackson to habeas relief, and the remainder of his claims were procedurally barred because he failed to present them to the state's highest court and failed to show that they were "substantial claims" of ineffective assistance so as to overcome the procedural bar. Further, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability will be denied.

An appropriate order will be entered.

**ENTER:** This _27th_ day of December, 2019.


NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE